Habold J. McLaughlin, J.
In this article 78 proceeding, petitioner, a probationary teacher of fine arts at Lafayette High School, Brooklyn, seeks judgment expunging the unsatisfactory rating given her and reversing, annulling and setting aside the determination discontinuing her services as a nontenured teacher.
The undisputed facts reveal that petitioner was appointed as a regular teacher of fine arts at Lafayette High School for a probationary term commencing September 9,1970. She taught at Lafayette High School from September 9, 1970 through January 31, 1971 at which time she sought and was granted a one-year leave of absence. Prior to petitioner’s appointment to Lafayette she taught in the New York City school system for four years under a substitute license where she received a satisfactory rating.
On January 29, 1971 petitioner was notified by her principal that her teaching performance for the period from September 9, 1970 through January, 1971 had been evaluated as unsatisfactory and recommended that her license be terminated. On or about February 4, 1971 petitioner appealed the unsatisfactory rating with the Office of Personnel of the Board of Education pursuant to section 105(a) of the by-laws of the Board of Education, but no action was taken on the appeal since petitioner was on leave of absence at that time.
On January 7, 1972 petitioner wrote to her principal advising him that she intended resuming her teaching duties on February 1, 1972.
Thereafter, on January 13, 1972 petitioner’s principal sent petitioner three copies of a report concerning her probationary services wherein she was rated unsatisfacory in 15 out of 24 categories. The principal recommended that petitioner’s probationary services be terminated; the recommendation was approved by the assistant superintendent in charge.
On January 26, 1972 petitioner was notified to appear at a hearing relative to the discontinuance of her probationary service. Petitioner appeared at the hearing along with the aid and assistance of a United Federation of Teachers advisor.
On or about February 22, 1972 the Chancellor’s committee unanimously recommended ‘ Discontinuance of Probationary Service”, which recommendation was subsequently approved by said Chancellor of the Board of Education of the City of New York.
*955 .Petitioner brings this proceeding challenging her dismissal on the ground that the proceedings nnder which petitioner was dismissed were legally insufficient and in violation of her due process rights guaranteed by the Fourteenth Amendment.
Petitioner contends that the failure of the by-laws here in question (§ 105 [a]) to provide for cross-examination of adverse witnesses and representation by counsel deprived her of her constitutional rights. Petitioner cites the recent case of Board of Regents v. Roth (408 U. S. 564), in support of her position.
Up to this time it has been generally held that a teacher has no vested rights during a probationary period and the services of a probationary teacher may be discontinued without a hearing and without giving reasons therefor. (See Matter of Butler v. Allen, 29 A D 2d 799; Matter of Pinto v. Wynstra, 22 A D 2d 914; Matter of McMaster v. Owens, 275 App. Div. 506; and Matter of High v. Board of Educ. of Union Free School Dist. No. 7, North Hempstead, 169 Misc. 98, affd. 256 App. Div. 1074, affd. 281 N. Y. 815.)
As recently as May of this year, the Appellate Division of this Department in Matter of Clamsen v. Board of Educ. of City of N. Y. (39 A D 2d 708) held “ the hearing afforded petitioner which resulted in the discontinuance of her services was adequate to protect her rights. Neither statute nor due process requires a plenary hearing or representation by counsel in such a matter ”.
The relevant statutes involved also suggest that a probationary teacher is not protected by due process rights.
Thus, former subdivision 1 of .section 2573 of the Education Law read in part as follows: “ Teachers * * shall be appointed by the board of education, upon the recommendation of the superintendent of schools, for a probationary period of not less than one year and not to exceed three years * * * The service of a person appointed to any of such position may be discontinued at any time during such probationary period, on the recommendation of the superintendent of schools, by a majority vote of the board of education.”
Section 100(7) of the by-laws of the Board of Education' provides: “The service of a person appointed for a probationary period * * * may be discontinued by the Board of Education at any time within such probationary period on .the recommendation of the Superintendent of Schools.”
Section 105(a) of such by-laws gives the probationary teacher the right to a notice of the time and place of hearing and the matter to be considered. It also provides the right to be *956 accompanied and advised by an employee oFthe Board of Education, to be confronted by witnesses, to call witnesses and to introduce any relevant evidence, but stops short of granting such petitioner the right of cross-examination and representation by counsel.
However, in June of this year and subsequent to the holding in the Clausen case (supra), the Supreme Court of the United States came down with its ruling in the Board of Regents v. Roth, case (supra) which appears to refine the rights of non-tenure teachers not heretofore recognized and brings into sharp focus the necessary ingredients of due process rights, as spelled out in Goldberg v. Kelly (397 U. S. 254).
In the Roth, case, the Supreme Court upheld the dismissal of a teacher without the necessity of a hearing or other emoluments of due process procedures. The court found that the petitioner was not deprived of liberty or the loss of her property right as those rights are understood. However, during the course of its opinion the court made some relevant and interesting observations concerning the rights of probationary teachers." The court stated the general principle as follows (p. 569): “ The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment’s protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.” The court then went on to state (p. 571) that it “has fully and finally rejected the wooden distinction between ‘ rights ’ and ‘ privileges ’ that once seemed to govern the application of procedural due process rights.”
The court declared that the terms ‘ ‘ liberty ’ ’ and ‘ ‘ property ” in the due process clause of the Fourteenth Amendment are not to be narrowly construed but must be given a broad interpretation. Thus, the court held (p. 572) that the concept “Liberty * * * denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children * * * and generally to enjoy those privileges long recognized * * * as essential to the orderly pursuit of happiness by free men ” and that property interests extend well beyond actual ownership of real estate chattels or money.
As the court stated further (p. 573): “ The State, in declining to rehire the respondent, did not make any charge against *957 him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For ‘ [w]here a person’s good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential ’ * * * Jn such a case, due process would accord an opportunity to refute the charge before University officials.” (Emphasis supplied.)
In the case at bar the charges made against petitioner involved her reputation and good name as a teacher, which comes within the concept of liberty as expressed in the Roth case.
Speaking of possible property rights of nontenured teachers, the Supreme Court held that (p. 573): “ There is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case. For ‘ [t] o be deprived not only of present government employment but of future opportunity for it certainly is no small injury. . . .’ * * * The Court has held, for example, that a State in regulating eligibility for a type of professional employment, cannot foreclose a range of opportunities ‘ in a manner . . . that contravene[s] . . . due process,’ * * * and, specifically, in a manner that denies the right to a full prior hearing.”
In this case the record clearly shows that there is a definite danger that petitioner may be deprived of the opportunity of future employment. Subdivision (g) of section 241 of the by-laws of the New York City Board of Education provides that a license shall terminate “ if and when the service of the license is terminated by the discontinuance of probationary appointment or by dismissal.”
Moreover, section 250 of the by-laws provides that: “ A person who has been dismissed from a position by the Board of Education, or who has resigned while charges against him were pending, shall not be eligible for reemployment under any license held by him at such time of severance from service; and no substitute certificate shall bedssued by virtue of licenses held by such employee.” .
The afore-mentioned statutory provisions clearly foreclose petitioner’s opportunity for future employment as a teacher *958 in the New York City school system. Upon this record, I would venture to say that petitioner would have an almost impossible task in obtaining a teaching position at any time and at any place.
The court also stated (p. 577) that “ It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
Though the Supreme Court in the Roth case (supra) rejected the concept that nonretention by one university or college would create practical difficulties in a teacher’s subsequent and academic career, it did so on the most narrow grounds. The court carefully noted (p. 574,n. 13), “ Mere proof, for example, that his record of nonretention in one job, taken alone, might make him .somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of ‘ liberty. ’ ’ ’ However, in the case under discussion, the issue is not nonretention alone but a loss of license, limitation of future employment opportunities and a possibly damaged reputation, all of which I find amounts to deprivation of liberty and property under the Fourteenth Amendment requiring a full prior hearing.
I am of the opinion that the hearing conducted herein under section 105(a) of the by-laws does not satisfy due process under the Fourteenth Amendment.
It would seem that the Supreme Court in the Roth case left open the type of hearing that should be afforded a nontenured teacher whose liberty and property right had been endangered, but there are strong indications in the opinion that the court was thinking in terms of a full prior hearing. Thus, the court uses phrases such as: refutation of charges, right to full prior hearing, and right to vindication. The extent of what constitutes a due process hearing under the circumstances here disclosed was fully spelled out in the case of Goldberg v. Kelly (397 U. S. 254). In that case the Supreme Court granted welfare recipients, denied assistance, full due process protection. Thus, the court held: The fundamental requisite of due process of law is the opportunity to be heard.’ (p. 267). * * * In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses, (p. 269). * * * ‘ The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.’ (p. 270). * * * Finally* the decisionmaker’s conclusion as to a recipient’s eligibility must *959 rest solely on the legal rules and evidence adduced at the hearing * * * To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on” (p. 271).
Accordingly, the matter is remanded to the Board of Education for a hearing in accord with the principles herein set forth.