Joseph P. Gagliardi, J.
In an article 78 proceeding petitioners seek reinstatement to their positions as teachers. Petitioners are 5 teachers formerly employed in the school system of the 'City of Yonkers. Their claims raise two important issues in the area of academic freedom: (1) whether probationary teachers are entitled to a full plenary hearing at the administrative level prior to termination of their services; and (2) whether the respondent Board of Education has the power under section 3031 of the Education Law to grant tenure in the absence of a positive recommendation by the School Superintendent.
FACTUAL BACKGROUND
Petitioners are 5 of 7 teachers out of a group of 235 who were not granted tenure in the Yonkers School 'District in 1973. Apparently all petitioners were hired in September, 1970 for a three-year probationary period which expired on June 30,1973.[1] On April 30,1973 each petitioner received a letter from respondent Alioto, the Superintendent of Schools, which stated that *905 their names would not be 6 ‘ included in the resolution recommending tenure that will be presented to the Board of1 Education ’ ’. The letter further stated that the services of each petitioner would terminate on June 30, 1973. The letter also advised that, pursuant to their collective bargaining agreement with the board, the petitioners were entitled, upon request, to an informal hearing with the superintendent and a written evaluation prior to final decision. Thereafter, respondent Alioto designated persons to observe and evaluate the petitioners. Subsequently, on June 20, and 21, 1973 each petitioner received an informal hearting before the superintendent ¡which was attended by the petitioner, petitioner’s school principal (with the exception of petitioner Ramos who was given the opportunity to submit a supplemental report), and a member of Yonkers Federation of Teachers. On June 27, 1973 Dr. Alioto notified each petitioner in writing that he was adhering to his original decision. Two days later each petitioner by letter requested reasons for the termination. On July 10, 1973 Dr. Alioto responded by letter setting forth his reasons. On or before August 20, 1973 each petitioner filed written responses addressed to the board. On August 23, 1973 the board passed a resolution which inter alia terminated the services of 7 teachers, including petitioners. The minutes of the resolution indicate that Mr. Tice, president of the Yonkers Federation of Teachers, urged the board to review the matter “ once more that Mr. Jacobson, president of the Board of Education, stated that each case had been reviewed by the board members and was discussed with the superintendent; and that Dr. Alioto stated that the board cannot grant tenure £< unless the superintendent recommends it ”.
PROBATIONARY TEACHERS; FUNCTIONS OF BOARDS OF EDUCATION AND SUPERINTENDENTS; JUDICIAL REVIEW
The issues raised herein require a brief discussion regarding tenure and the respective functions of the Board of Education and School Superintendent. The primary purpose of tenure is to afford security to competent members of the education system (Matter of Boyd v. Collins, 11 N Y 2d 228). The tenure statutes as presently extant (Education Law, §§ 2509, 2573, 3012, 3013) were enacted to impose conditions on the Board of Education’s exercise of power in regard to hiring (Matter of McMaster v. Owens, 275 App. Div. 506). Prior thereto, boards had unlimited power to hire or refuse to hire teachers or renew their contracts (ibid). The cited sections are located *906 in different articles of the Education Law, and while each section relates to a specific type of school system, they are comparable and receive uniform construction. Article 52 of the Education Law applies to the City School District in Yonkers (Education Law, § 2550). Former subdivision 1 of section 2573 provided that teachers shall be appointed by the board upon recommendation of. the superintendent for a probationary period of three years '(now five years, see n. 1, supra). Subdivision 5 of section 2573 of the Education Law provides that “ at the expiration of the probationary term of any persons appointed for such term, the superintendent of schools shall make a written report to the board of education recommending for permanent appointment those persons who have been found competent, efficient and satisfactory”. Persons not recommended for appointment on tenure must be notified of that fact by the superintendent no later than 60 days prior to the expiration of the probationary period (Education Law, § 2573, subd. 1). The statute also provides that a probationary teacher’s services may be discontinued at any time upon recommendation of the superintendent and majority vote of1 the board (ibid.). The ultimate power of appointing teachers and superintendents resides in the board (Education Law, § 2554, subds. 1, 2, 15a). Upon receipt of tenure a teacher may not be discharged except as provided in section 3020-a of the Education Law, which gives him the right to receive the charges against him and the right to a hearing.
The superintendent’s primary function in regard to personnel is to screen all the candidates eligible for tenure and recommend the appointment of those who qualify by objective standards (Matter of Tischler v. Board of Educ., 37 A D 2d 261). Prior to 1972 it was well recognized that the board could not grant tenure in the absence of the positive recommendation of the superintendent (Matter of McMaster v. Owens, 275 App. Div. 506, supra; Matter of Gunthorpe v. Board of Educ., 41 Misc 2d 757; Matter of High v. Board of Educ., 169 Misc. 98, affd. 256 App. Div. 1074, affd. 281 N. Y. 815; Matter of Meehan, 11 Ed. Dept. Rep. 34; Matter of Marino, 11 Ed. Dept. Rep. 336; Matter of Porteous, 50 N. Y. St. Dept. Rep. 20; see Matter of Sechrest v. Board of Educ., 7 Misc 2d 297)[2] even *907 where the board so desires (Matter of Board of Educ., Union Free School No. 15, 78 N. Y. St. Dept. Rep. 78). On the other hand, the board may deny tenure despite the positive recommendation of the superintendent (Matter of Legislative Conf. of City Univ. of N. Y. v. Board of Higher Educ., 38 A D 2d 478, affd. 31 N Y 2d 926; Matter of Central School Dist. No. 1 [Mahopac Teachers], 72 Misc 2d 503; Matter of Gunthorpe v. Board of Educ., supra; Matter of Solominski, 5 Ed. Dept. Rep. 120; Matter of Downey, 72 N. Y. St. Dept. Rep. 29). Thus, tenure could be acquired by any 1 of 2 methods: (1) upon the recommendation of the superintendent and concurrence of the board; or (2) by estoppel where the teacher continues to perform services beyond the probationary period with the knowledge and consent of the superintendent and the board (Matter of Gunthorpe v. Board of Educ., supra; Matter of Downey, supra). The board may dismiss a probationary teacher prior to the expiration of the probationary period but only upon the recommendation of the superintendent (Matter of Board of Educ. v. Allen, 283 App. Div. 376; Matter of Graves v. Barber, 193 Misc. 326). Until .recent developments in the law it was settled that a probationary teacher acquired no vested rights and his services could be discontinued without a hearing and without giving reasons therefor (Matter of Clausen v. Board of Educ., 39 A D 2d 708; Matter of Legislative Conf. of City Univ. of N. Y. v. Board of Higher Educ., 38 A D 2d 478, affd. 31 N Y 2d 926, supra; Matter of Board of Educ. of City of Albany v. State Div. of Human Rights, 38 A D 2d 657, affd. 30 N Y 2d 925; Matter of Butler v. Allen, 29 A D 2d 799; Pinto v. Wynstra, 22 A D 2d 914).
In matters regarding the discontinuance of a probationary teacher’s services, the Commissioner of Education initially took the view that the board had vast discretion which was not subject to his review (Matter of Williams, 53 N. Y. St. Dept. Rep. 164; Matter of Silver, 50 N. Y. St. Dept. Rep. 194). Similarly, the commissioner has refused to review the superintendent’s decision not to certify a probationary teacher for tenure (Matter of Payne, 42 N. Y. St. Dept. Rep. 382). However, it has been held that the courts in an article 78 proceeding will review the board’s denial of tenure upon claims of malevolent factors (Matter of Fallon v. Board of Higher Educ., 14 Misc 2d 9, affd. 9 AD 2d 766; see Hickey v. Carey, 86 N. Y. S. 2d 813, affd. 275 App. Div. 949; People ex rel. Graves v. Barber, 86 N. Y. S. 2d 532) where, for example, it is alleged that discontinuance was motivated by exercise of the teacher’s constitutional rights, *908 such as freedom of speech (Matter of Bergstein v. Board of Educ., 42 A D 2d 591; Matter of Tischler v. Board of Educ., 37 A D 2d 261, supra; Matter of Brown v. Board of Educ., 76 Misc 2d 923). The Commissioner of Education has recently ruled that such claims are reviewable by his office (Matter of Marino, 11 Ed. Dept. Rep. 336; Matter of James, 10 Ed. Dept. Rep. 58). The courts will also entertain an article 78 proceeding to compel a principal to forward the names of probationary teachers to the superintendent for inclusion in the list from which he recommends persons for tenure (Matter of Brown v. Union Free School Dist. No. 16, 278 App. Div. 701, affd. 302 N. Y. 924; Matter of Millicker v. Board of Educ., 275 App. Div. 849, affd. 300 N. Y. 634). These last two cited cases recognize that it is the superintendent who has sole discretion to determine who is to be recommended for tenure appointment. As recently as May, 1973 this latter rule was held applicable in a case where the probationary teacher’s probation period was “ deemed ” to have expired as of June 30, 1972 as provided for by chapter 953 of the Laws of 1972 (Socha v. Chiuchiolo, N. Y. L. J., May 31, 1973, p. 20, col. 8). Section 3031 of the Education Law was not involved in the last-cited case.
Boards of Education derive their powers from statutes (Smith v. Helbraun, 21 A D 2d 829) but it is uniformly held throughout the United States that they have vast discretion in personnel appointment and in the absence of violation of positive law the courts ordinarily will not review the wisdom or policy of a particular appointment or nonappointment (Matter of Council of Supervisory Assns. of Public Schools of N. Y. City v. Board of Educ., 23 N Y 2d 458; 3A Antieau, Independent Local Government Entities, § 30C.08; cf. Cleveland Bd. of Educ. v. LaFleur, 414 U. S. 632; Matter of Board of Educ. v. Nyquist, 31 N Y 2d 468).
Finally, it is to be noted that as of 1968 “ no article 78 proceeding has apparently ever been successfully brought to force a superintendent to recommend a teacher for tenure ” (Albaum v. Carey, 283 F. Supp. 3, 8). In the cited case subdivision 2 of section 3012 of the Education Law was challenged as constitutionally vague. Judge Weinstein observed that an article 78 proceeding could be commenced to review the nonrecommendation of tenure whenever claims of constitutional violations were asserted (supra, pp. 5-9). A three-Judge court was convened to determine the constitutional question and it was held that the statutory guidelines “ competent, efficient and satisfactory ” passed constitutional muster. The complaint was dismissed. It *909 must be emphasized that subdivision 5 of1 section 2573 of the Education Law, which is applicable here, uses identical language.
1972' CHANGES
In 1972 the United States Supreme Court decided two matters which directly affect the rights of nontenured teachers, and the State Legislature enacted a provision of seemingly vast import. On June 29', 1972 the Supreme Court decided Board of Regents v. Roth (408 U. S. 564) and Perry v. Sindermann (408 U. S. 593). In Roth it was held that a nontenured college professor was not entitled to the reasons or a hearing upon his employer’s refusal to rehire him at the expiration of the employment term. The court did note that the. Fourteenth Amendment provided for procedural due process prior to a deprivation of liberty or property. Liberty would be involved where the underlying charges concerned the person’s reputation, honor or integrity (408 U. S. 564, 573); or where the failure to re-employ created a stigma that foreclosed the teacher from obtaining similar employment (ibid.). In this regard the court stated that it could not indulge in an “ assumption ” that nonretention would cause difficulty in taking advantage of other employment opportunities (408 U. S. 564, 574, n. 13). Insofar as property rights were concerned the court stated that procedural due process applies only where the person had ‘1 a legitimate claim of entitlement to it ” (i.e., re-employment, 408 U. S. 564, 577). The court further observed that when these rights have been established the guidepost for the formality and procedural requisites of the hearing vary depending upon the nature of the interest at stake (408 U. S. 564, 570). In Perry it was held that the nontenured college teacher had established an entitlement to job tenure upon proof of constructive tenure, which required the employer to give him a statement of reasons and a hearing on the decision not to retain him. In an unrelated development, the State Legislature on June 2, 1972 enacted section 3031 of the Education Law, effective July 1, 1972 (L. 1972, ch. 866). The statute (which is quoted, infra) in essence provides that where a nontenured teacher is not recommended for tenure he may request written reasons therefor and respond in writing prior to board action.
ISSUES AND ARGUMENTS
Petitioners claim a constitutional right ‘1 to have a meaningful opportunity to refute the charges made by the Superintendent ”, which I interpret to mean a plenary hearing before the board. Petitioners also contend that they have a statutory *910 right to have their written responses considered by the board, which they claim was not done here. Petitioners further urge that section 3031 of the Education Law as interpreted by respondents renders the statute meaningless and raises a constitutional question regarding subdivision 5 of section 2573 of the Education Law. Respondents, for their part, assert that petitioners are not constitutionally entitled to a hearing before the board, that section 3031 has been complied with and that, in any event, the board cannot confer tenure in the absence of the superintendent’s favorable recommendation.
PROCEDURAL DUE PROCESS' OF LAW
The court shall consider the constitutional issues first. There is no direct challenge to any provision of the Education Law in this case which requires the presence of the Attorney-General (Executive Law, § 71). Furthermore, it should be observed that the Commissioner of Education lacks power to adjudicate constitutional questions (Bevan v. New York State Teachers’ Retirement System, 74 Misc 2d 443) and has refused to determine whether a hearing before the board is a constitutional requisite to board action (Matter of Slater, 12 Ed. Dept. Rep. 275).
It is clear that Roth and Sindermamn (supra) have undermined the ruling in Bailey v. Richardson (182 F. 2d 46, affd. 341 U. S. 918) which held that public employment was a privilege not subject to due process guarantees. Nontenured teachers do have constitutional rights if deprived of liberty or property as defined in the above decisions (Comment, 73 Col. L. Rev. 882 [1973]; 1972/1978 Annual Survey of Amer. Law, pp. 541-550). While probationary teachers have not acquired precisely the same rights as those with job tenure, Roth-Sindermann affords them equivalent power to preclude arbitrary action by the board (cf. Note, Developments in the Law — Academic Freedom, 81 Harv. L. Rev. 1045, 1078-1084, 1090-4093 [1968]). However, petitioners have failed to establish deprivation of their “ liberty ” or “ property ” rights. The court has read the reasons assigned by the superintendent why petitioners were not recommended for tenure.[3] All of the reasons listed dove *911 tail with the statutory requirements and relate to competency, efficiency and satisfaction with petitioners’ performance (Education Law, § 2573, subd. 5). No stigma attaches to petitioners based upon these reasons and no proof has been offered that employment cannot be obtained in another school system in this county. Indeed, one petitioner had previously been refused tenure in the school system of a neighboring locality. No attempt has been made to demonstrate whether or not his position is better or worse as the result of a second rejection. Similarly, the same petitioner had previously been informed at the end of his second probationary year that his services were to be terminated, but he prevailed upon respondent Alioto and was afforded the opportunity to complete his probationary period. None of the petitioners claim de facto tenure or constructive tenure (cf. Matter of Weinbrown v. Board of Educ., 28 N Y 2d 474). Some of the petitioners may have had a subjective expectancy of re-employment but that abstract desire is not sufficient to invoke the due process clause (Board of Regents v. Roth, 408 U. S. 564, 577, supra).
In post-Roth-'Sindermann decisions in this State by the Commissioner of Education (Matter of Shapiro, 12 Ed. Dept. Rep. 158) and the courts (Matter of Brown v. Board of Educ., 42 A D 2d 702; Board of Educ. v. Chautauqua Cent. School Dist. Teachers Assn., 41 A D 2d 47, 52; Matter of Baronoff v. Board of Educ., 72 Misc 2d 959; Socha v. Chiuchiolo, N. Y. L. J,, May *912 31, 197-3, p. 20, col. 8, supra) it has been held that the Supreme Court determinations do not require a plenary hearing before the board in the absence of proof bringing the probationary teacher within the exceptional cases noted by the United States Supreme Court wherein procedural due process would apply. This is the approach of the Federal cases (see, e.g., Moore v. Knowles, 482 F. 2d 1069; Clark v. Holmes, 474 F. 2d 928, cert, den. 411 U. S. 972). Of course, where the nontenured teacher can establish denial of academic due process, a hearing is required before the appropriate educational authority prior to a decision to terminate (Zimmerer v. Spencer, 485 F. 2d 176; Francis v. Ota, 356 F. Supp. 1029; 1 Antieau, Modern Constitutional Law, § 7.24 [1973 Supp., pp. 90-91]). In New York, two reported decisions involving discontinuance of probationary teachers’ services have granted the teachers a full hearing with the assistance of counsel before the .board upon proof that their “ liberty ” and “ property ” rights were directly affected (Aster v. Board of Educ., 72 Misc 2d 953; Matter of Pall, N. Y. L. J., April 10, 1973, p. -20, col. 1). Nonetheless, those factors are not present here and the court concludes that petitioners have no constitutional right to written reasons for the discontinuance of their services nor to a hearing before the board (cf. 1 Davis, Administrative Law Treatise, § 7.13; Comment, 19 U.C.L.A. L. Rev. 1052 [197,2]).
SECTION 3031 OF THE EDUCATION LAW
Before reaching the issues regarding section 3031 of the Education Law it is necessary to mention certain other facets of this case that appear in the papers. At least one petitioner complains in his written response to the board that he was not evaluated on one occasion during his probationary term as required under the collective bargaining agreement. Respondents correctly note that such contractual violation is irrelevant on the tenure question (Matter of Hauppauge Classroom Teachers Assn. v. Millman, 35 A D 2d 844, app. dsmd. 28 N Y 2d 483). Additionally, while the parties do not allege that the relevant notice provisions of the Education Law, including section 3031, were violated, it appears that the board meeting was adjourned at least once, that the superintendent’s written reasons may not have been furnished within the statutory seven-day period, and that one of the petitioners submitted his response only three days prior to the meeting (rather than no later than seven days prior thereto). These violations may be disregarded as mere irregularities (Matter of Hazard v. Board of Educ., 16 A D 2d 481; Matter of Brida v. Ambach, 69 Misc *913 2d 900; Matter of McDaniel, 12 Ed. Dept. Rep. 182). Additionally, as noted earlier, petitioners claim that the hoard did not consider their written responses. The minutes of the hoard meeting refute this contention, as does the affidavit by the President of the Board, Mr. Jacobson. However, it is respondents’ position that, despite review, they were powerless to confer tenure on petitioners. For the purposes of this motion it shall be assumed that the board considered petitioners’ written responses.
Section 3031. of the Education Law was added by chapter 866 of the Laws of 1972 and provides:
“ Notwithstanding any other provision of this chapter and except in cities having a population of one million or more, boards of education and boards of cooperative educational services shall review all recommendations not to appoint a person on tenure, and, teachers employed on probation by any school district or by any board of cooperative educational services, as to whom a recommendation is to be made that appointment on tenure not be granted or that their services be discontinued shall, at least thirty days prior to the board meeting at which such recommendation is to be considered, be notified of such intended recommendation and the date of the board meeting at which it is to be considered. Such teacher may, not later than twenty-one days prior to such meeting, request in writing that he be furnished with a written statement giving the reasons for such recommendation and within seven days thereafter such written statement shall be furnished. Such teacher may file a written response to such statement with the district clerk not later than seven days prior to the date of the board meeting.
“ This section shall not be construed as modifying existing law with respect to the rights of probationary teachers or the powers and duties of boards of education or boards of cooperative educational services, with respect to the discontinuance of services of teachers or appointments on tenure of teachers.”
Petitioners, in their brief, set forth excerpts from the memorandum in support of the legislation. These quotations state in essence that the section is designed to afford additional procedural safeguards to teachers regarding their employment future, to enable probationary teachers to secure reasons for “ adverse action concerning their employment” and to enable teachers whose services are to be discontinued ‘1 an opportunity to respond in writing ”. There is absolutely no requirement in the statute, nor statements in the memorandum in support of the section, that such teachers be afforded a hearing. Mr. Justice *914 Habkett in Matter of Baronoff v. Board of Educ. (72 Misc 2d 959, 962, supra) noted otherwise hut his statement was dictum and I respectfully disagree with his conclusion on this point. Subsequent to Baronof the Commissioner of Education expressly ruled that section 3031 does not authorize a hearing upon termination of a teacher’s services (Matter of McGrath, 13 Ed. Dept. Rep.-, No. 8699, Sept. 10, 1973; cf. Matter of Slater, 12 Ed. Dept. Rep. 275). His interpretation of the statute on the point in issue is rational and is given great weight (Matter of Nyboe v. Allen, 7 A D 2d 822; Matter of McMaster v. Owens, 193 Misc. 284, 289, affd. 275 App. Div. 506).
The next question and the crux of this case is whether section 3031 confers upon the board the power to grant tenure in the absence of a positive recommendation by the superintendent. There is little case law construing this recently enacted provision but my colleagues, Justices Dempsey and Beisheim, have had occasion to discuss the section. Both jurists have held that the notice requirements of section 3031 do not apply where the superintendent recommends tenure which is subsequently not granted by the board (Matter of Sonnenreich v. Board of Educ., Index No. 14572/72 [Sup. Ct., Westchester County, Jan. 11, 1973, Dempsey, J.]; Opert v. Board of Educ., 76 Misc 2d 1025; see Matter of Saderholm, 12 Ed. Dept. Rep. 207). Subsequently, in Matter of Brown v. Board of Educ. (76 Misc 2d 923) Justice Beisheim found it unnecessary to reach the issue presented here since he concluded that petitioner stated a cause of action for reinstatement based on impermissible reasons. The case is highly significant, however, because it holds that an article 78 proceeding is proper to review the superintendent’s decision not to recommend the teacher for tenure.
Three recent opinions from the Department of Education discuss section 3031 and must .be analyzed. In Matter of Waterman (13 Ed. Dept. Rep.-, No. 8714, Sept. 10, 1973) Acting Commissioner Ambach held that section 3031 did not apply where the superintendent notified the probationary teacher that she would not be recommended for tenure and her services would terminate upon expiration of the probationary period. The acting commissioner noted that the superintendent’s refusal to recommend is not a ‘£ recommendation ’ ’ within the meaning of subdivision 2 of section 3013 of the Education Law. It was held (p.-) ££ The refusal of the superintendent to make an affirmative recommendation that tenure be granted is not a recommendation, but rather a final act, and the board of education has no power to take any action at all in the absence of an *915 affirmative recommendation that tenure be conferred”. In Matter of McGrath (13 Ed. Dept. Rep.-, No. 8699, Sept. 10, 1973) 'Commissioner Nyquist distinguished Waterman and held that section 3031 applies to a situation where the superintendent recommended dismissal of a probationary teacher prior to expiration of the probationary term because the board has the power to confirm or reverse the superintendent’s recommendation under those circumstances. Of course, McGrath does not change prior law regarding board power on dismissals during the probationary period (Matter of Sheedy, 12 Ed. Dept. Rep. 216; Matter of Brown, 12 Ed. Dept. Rep. 109). In Matter of Delaney (13 Ed. Dept. Rep.-, No. 8723, Oct. 3, 1973) Commissioner Nyquist confirmed the holding in Waterman. In Delaney the commissioner had to contrast section 3031 with section 3012, whereas in Waterman, section 3013 was involved. The commissioner held that no difference in result may occur. Seemingly, therefore the commissioner would interpret subdivisions 1 and 5 of section 2573 as he construed the other comparable legislation. In sum, the commissioner has concluded that section 3031 is applicable to dismissals “ during ” the probationary period but not to refusals to recommend for tenure (Also, see, Matter of Fierra, 13 Ed. Dept. Rep.-, No. 8772, Jan. 22, 1974).
I cannot agree with the commissioner’s restrictive interpretation of the statute. In the memorandum in support of the statute, its provisions were summarized as providing for notification, written reasons and time to respond “ when tenure is not to be granted at the end of the probationary period ”. The conclusion reached in McGrath is commendable, for the statute literally read is equivocal as to whether dismissals “ during ” probation are encompassed therein; and the commissioner’s decision which affords teachers additional procedural rights in such circumstances is in accord with the spirit of the statute. Yet, the statute plainly refers to “ recommendations ” not to grant tenure. The quoted word is a misnomer in the statutory context because superintendents do not recommend persons for nontenure; rather they notify said persons that tenure will not be recommended and then forward to the board those names of persons recommended for tenure. Nonetheless, the board is aware of those persons not recommended for tenure and often, as here, passes a formal resolution terminating their services at the end of the probationary period.
The board is given the power to “ review ” those cases in which persons are not recommended for tenure. The commis *916 sioner has taken the position that “ review ” is unnecessary because the board cannot act in such cases. Respondents aver that “ review ” did occur but that the board was powerless to grant tenure. What is the purpose of review if the board cannot overrule the superintendent? The statute is rendered virtually meaningless were the court to adopt the commissioner’s interpretation. Such an absurd construction is to be avoided (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 145; also, see, §§ 94, 230, 231). In legal parlance, “ review ” means a reconsideration, a second view or examination; revision; consideration for purposes of correction (Black’s Law Dictionary [4th ed.], p. 1483). Mr. Justice Shientag has discussed the meaning of the word ‘ ‘ review ’ ’ within the context of a statutory grant of such power (Wilmerding v. Bonaschi, 166 Misc. 140). The question presented in Wilmerding was whether the Teacher’s Retirement Board could modify a present service certificate upon an application made prior to statutory amendment which precluded modification after May 4, 1935. Prior to the statutory date the board had the power of review and the application was considered after such date. ‘ ‘ Does the statute prevent a 1 modification ’ by the board of certificates issued one year prior to May 4, 1935, if the application for a change has been made prior to this last date? To so construe the statute would lead to the absurd result that, although the board can ■ review ’ the certificate, it is forbidden to make any ‘ modification ’ of it. The right to a ‘ review ’ granted to a teacher becomes meaningless under such a construction, for his remedy has been completely emasculated; the power given to the board to review such certificates becomes an empty formula, for the power can be exercised, if at all, only imperfectly. Any such absurd and unjust construction will be avoided if the statute can receive another construction consonant with its primary purpose ” (166 Misc. 140, 141-145). The court concurs generally in the above observations and it is "only necessary to ascertain the meaning of the last sentence of the statute which provides (Education Law, § 3031): “This section shall not be construed as modifying existing law with respect to the rights of probationary teachers of the powers and duties of boards of education or boards of cooperative educational services, with respect to the discontinuance of services of teachers or appointments on tenure of teachers.” “Modify” has been defined in Webster’s Third New Int. Dictionary as: to qualify, change and alter (p. 1452). It has also been defined to enlarge, extend, limit and reduce (Black’s Law Dictionary [4th ed.], p. 1155). “Modification” means the act of changing something without *917 fundamentally altering the general scheme (Webster’s Third Int. Dictionary [3d ed.], 1452; Black’s Law Dictionary [4th ed.], p. 1155). Admittedly, the statute is inartfully drawn but the court must apply the canon of1 construction that each part of a statute is to be given meaning and be interpreted so as to avoid absurd results (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 235). The statute is primarily concerned with board review of denial of tenure. Significantly, the statutory interdiction against modifying existing law does not include the powers of superintendents. To interpret the statute as respondents urge, as noted earlier, would render it nugatory. The only rational construction to be given this section is that the board’s powers are not decreased. Were the commissioner’s interpretation directly before the court, it would have to be reversed as arbitrary and capricious (Komyathy v. Board of Educ., 75 Misc 2d 859, 863). Accordingly, the court holds that section 3031 of the Education Law authorizes a board to overrule the superintendent’s refusal to recommend for tenure and to grant tenure by application of the criteria espoused in subdivision 5 of section 2573.
The board “ is given broad direction to take into account the intangible subjective factors that are impossible to enumerate but which are inherent in the choice of a permanent teaching staff for carrying on the work of1 the school district ” (Matter of Tischler v. Board of Educ., 37 A D 2d 261, 263-264). Thus, the board may affirm its prior resolution or reverse itself and grant tenure, in any of the individual cases before it, as in the sound exercise of its discretion it deems advisable. This task, one solely within the prerogative of the superintendent insofar as recommendations for tenure are concerned, may not be delegated (cf. Board of Educ. v. Associated Teachers of Huntington, 30 N Y 2d 122; also, see, Matter of Associated Teachers of Huntington v. Board of Educ., 33 N Y 2d 229). The court is aware of the principle that tenure provisions are in derogation of the common law and must be strictly construed (Matter of McMaster v. Owens, 275 App. Div. 506, supra). Furthermore, the general revision of the Education Law in the middle and late 1940’s which added the tenure provisions as they presently appear and which seemingly required the favorable recommendation of the superintendent as an absolute condition precedent to board action (ibid.), does not aid respondents. Statutes have hidden meanings (Williams v. Williams, 23 N Y 2d 592) and the 1972 legislation, in giving the board review power without modifying existing law regarding board power, changed the law in this respect without fundamentally altering the criterion *918 employed in tenure matters. The ¡board is no longer the rubber stamp of the superintendent’s refusal to recommend tenure.
The board’s failure herein to review, without knowledge that it had the power to grant tenure, is fatal to its determination. Of course, the defect in not adhering to the statute is not sufficient for the court to award tenure (Rendell v. Alioto, 42 A D 2d 597) and the matter must be remitted for de novo review.
Accordingly, the petition is granted to the extent that the determination is annulled and the matter remitted to the board for review pursuant to section 3031 of the Education Law.

. Former subdivision 1 of section 2573 of the Education Law provided for a probationary period of three years. This was increased to five years by Laws of 1971 (eh. 116, § 10, eff. May 9, 1971). The new period was suspended until October 1, 1971 (L. 1971, eh. 1102). However, the five-year period is not applicable to teachers appointed for a probationary term prior to May 9, 1971 (L. 1972, ch. 953, § 16). Therefore, former subdivision 1 of section 2573 is applicable to this case.

. It is significant that in the first three cases cited, McMaster, Gunthorpe and High, which are often relied upon by the Commissioner of Education for the statement asserted in the opinion, the Superintendent in fact recommended tenure and the pronouncement of the principle was made preliminarily to resolution of the other issues presented. Nevertheless, the commissioner has repeatedly reaffirmed the principle mentioned.

. The reasons set forth are as follows:
Anderson (1) ineffective student control techniques
(2) inability to organize meaningful instruction
(3) inability to plan and structure instructions to meet the needs of individual students
(4) teaching techniques directionless in terms of goals and objectives that students can understand
*911 Hollender (1) inadequate teaching skills
(2) ineffective classroom management and student record keeping
(3) inability to individualize instructional program
(4) inappropriate use of instructional material
(5) inadequate student control techniques
Hunter (1) insensitive to needs of students
(2) inadequate curriculum planning
(3) ineffective organizational techniques
(4) inability to motivate students
Ramos (1) reluctance to follow standard procedures in terms of written reports on case studies
(2) inability to cooperate within the district guidance-psychologist-social worker team
(3) inability to follow through on assigned student case studies and families who require social work service
(4) failure to adhere to required time schedule
(5) irrelevant use of professional time
(6) ineffective participation in total school program
White (1) lack of adequate instructional planning
(2) failure to perform duty assignments satisfactorily
(3) unsatisfactory methodology and classroom performance