Frank S. Rossetti, J.
This claim is for damages arising from the alleged wrongful discharge of claimant from his position as professor in the pediatrics department at the Downstate Medical Center of the State University of New York (hereinafter school) in Brooklyn, New York.
In 1965 claimant was approached by a joint search committee from the school and Brooklyn Jewish Hospital (hereinafter hospital). Although not a State institution, the hospital was one of several affiliated with the school. The committee was looking for a qualified doctor to serve jointly as director of pediatrics at the hospital and as professor of pediatrics at the school. As director the candidate would be in charge of the hospital’s pediatrics department and as professor he would teach pediatrics at the hospital to medical students of the school. His professorial duties would also include supervising the other doctors teaching pediatrics at the hospital.
Claimant was selected by the committee for this twofold position. He was hired by the hospital sometime in 1965 and appointed a professor by the school on September 1, 1965. His appointment was temporary, apparently because his salary was paid exclusively by the hospital and the school would not give permanent appointments to professors whose salaries it did not pay.
Claimant served in this dual capacity for seven years, until he was discharged by the hospital in November, 1972 because of dissatisfaction with the performance of his administrative duties. Apparently the pediatrics department was not attracting or retaining enough young doctors. The school was aware of claimant’s problems with the hospital, but did not object to his discharge therefrom.
On January 26, 1973 Dr. Pryles wrote to the then president of the school, Dr. Calvin Plimpton, requesting clarification of his (claimant’s) status with the school and indicating he desired to remain as a professor at the school. Dr. Plimpton replied on February 26, 1973 that when claimant’s activities at the hospital terminated, "it is my obligation to also terminate your professorship.”
Thereafter, on June 13, 1973 claimant filed a notice of intention with this court and on July 25, 1973 the subject claim.
At trial the State moved to dismiss the claim for failure to timely file, alleging claimant’s cause of action arose on his discharge from the hospital in November, 1972. Claimant *208 counters the cause of action arose only on his notification of termination by the State, in Dr. Plimpton’s February 26, 1973 letter.
On all the evidence, we deem the subject claim governed by the six-month filing requirements of subdivision 4 of section 10 of the Court of Claims Act. The claim is basically one for breach of contract and does not involve sufficient tortious elements to bring it within the 90-day time limitation of subdivision 3 of section 10 of the Court of Claims Act.
Further, we find the claim did not arise until February 26, 1973. The school regulations require prompt written notification of all changes in the terms and conditions of positions of professional staff members (see former 8 NYCRR 335.15, now 335.23).[1] Being fired is certainly such a change. Additionally, the evidence revealed other doctors having dual appointments such as claimant’s were occasionally kept in their professorial positions by the school after termination of their medical administrative positions with an affiliated hospital. Generally, positions with other affiliated hospitals were found for these doctors. In any event, it was clear the custom and usage of these dual temporary appointments did not mandate automatic termination by the school upon termination by an affiliated hospital. Under the circumstances, the school should not be permitted to take advantage of its failure to follow its own regulations. Thus we find the claim timely filed.[2]
A second procedural problem involves the court’s authority to hear this claim. The claim requests damages for loss of wages, loss of reputation and reinstatement. This court has *209 only those express powers granted by the Court of Claims Act and its equitable powers are limited to those incidental to money judgments. (See Murphy v Schuler, 74 Misc 2d 732; Montgomery v State of New York, Dept. of Mental Hygiene, Narcotics Addiction Control Comm., 69 Misc 2d 127, affd 43 AD2d 552.) Lacking general equitable powers (see Matter of Silverman v Comptroller of State of N. Y., 40 AD2d 225), we cannot grant the reinstatement sought herein. Further, damages to good name, character and reputation are not recoverable in an action for wrongful discharge. (See Amaducci v Metropolitan Opera Assn., 33 AD2d 542.) Finally, the Court of Appeals has set down the general rule that reinstatement via a CPLR article 78 proceeding is a condition precedent to the recovery of back pay. (See Austin v Board of Higher Educ. of City of N. Y., 5 NY2d 430; see, also, Bloome v Glasser, 33 AD2d 563, affd 26 NY2d 864; Matter of Gordon v Board of Educ. of City of N. Y., 52 Misc 2d 175; Smith v Helbraun, 24 AD2d 518.) No such proceeding has previously been brought against the State and none can be brought here. (See Murphy v Schuler, supra; Speare v State of New York, 42 Misc 2d 304.) Nonetheless, there are exceptions to this rule (see Forino v City of Troy, 42 AD2d 647; Friedman v State of New York, 24 NY2d 528, 537, n 2, mod 25 NY2d 905; Smith v Helbraun, supra; Toscano v McGoldrick, 300 NY 156; Steinson v Board of Educ. of City of N. Y., 165 NY 431), including where the dismissal was jurisdictionally defective (see Friedman v State, supra). Claimant’s basic contention here is he had tenure and thus was dismissible only for cause (8 NYCRR 338.4), after notice (8 NYCRR 338.5) and a hearing (8 NYCRR 338.6). A tenured professor can be terminated only by the board of trustees (see 8 NYCRR 338.11) and, therefore, if claimant were correct in alleging tenure, his dismissal by the school president would be procedurally defective. Accordingly, the putative ineffectiveness of claimant’s dismissal arguably brings his claim for loss of wages within an exception such as noted in Friedman v State (supra), at least at the pleading stage. However, as hereinafter demonstrated, claimant’s contentions of tenure are baseless. Without tenure, claimant’s dismissal was procedurally proper and the rule set down in Austin v Board of Higher Educ. of City of N. Y. (supra), would appear to foreclose his action herein. However, we need not base our decision on such a procedural defect since it is clear the claim is substantively without merit.
*210 Claimant contends he had tenure upon his appointment in 1965 or at least acquired it automatically thereafter under the school’s regulations. Through hearsay testimony, received solely to show claimant’s state of mind when he accepted his appointment in 1965 (see e.g., Richardson, Evidence [10th ed], §205), the then president of the school, Dr. Robert Moore, allegedly gave certain assurances to claimant prior to his appointment. These included complete academic protection and that any dismissal would only be for cause. Dr. Moore purportedly explained to Dr. Pryles that only a temporary appointment would be offered because of budgetary reasons— i.e., because claimant was not being paid by the State, it was State policy not to grant him a more permanent appointment. Dr. Moore allegedly characterized the temporary appointment as merely a technicality and necessary formality.
Notwithstanding, claimant’s letter of appointment clearly specified the appointment was temporary and subject to the regulations of the school. These regulations[3] unequivocally stated a temporary appointment was terminable at will (see former 8 NYCRR 335.11, now 335.19, 338.1).[4] The court believes it is clear the appointment letter of September 1, 1965 and the school regulations were intended to be the final understanding of the parties. Thus the representations allegedly made by Dr. Moore are not only inadmissible to bind the State because of their hearsay nature, but also are immaterial and incompetent in the interpretation of the appointment agreement because of the parol evidence rule. Where, as here, there are no ambiguities (the regulations are definite on the terminability of temporary appointments), that rule proscribes the use of prior oral representations to vary the terms of the contract (see e.g., Restatement, Contracts, § 237; Richardson, Evidence [10th ed], § 601). The court therefore finds claimant received only a temporary appointment in 1965 and, by its terms, said appointment was terminable at will by the president of the school.
Claimant further contends, however, that even if his ap *211 pointment were technically a temporary one, it matured into a tenured continuing appointment under the school’s regulations (see 8 NYCRR 335.4 [a]). We cannot agree.
First, claimant received no additional appointment beyond his temporary 1965 one and we do not believe temporary appointments were intended to automatically become continuing (tenured) appointments through the mere passage of time. At the time of claimant’s dismissal the State regulations for the school set forth three basic types of appointments, namely, continuing, term and temporary (see former 8 NYCRR Part 335, now Titles B, D, F). The continuing appointment was the same as tenure, being generally terminable only for cause (8 NYCRR 335.2).[5] The term appointment was analogous to a probationary appointment, being for a specified term not to exceed three years (see former 8 NYCRR 335.5, now 335.10). The temporary appointment encompassed miscellaneous non-permanent appointments, such as parttime, voluntary or short term (less than one year — see former 8 NYCRR 335.11, now 335.19).[6] The eligibility requirements for a continuing appointment delineated a maximum three-year probationary period, consistent with the maximum term appointment. From a complete reading of the regulations, it is the court’s view it was not envisioned or intended that a temporary appointment be capable of maturing into a continuing one. Thus the prerequisites for a tenured continuing appointment were not present here and therefor such an appointment could not arise by estoppel or otherwise (see Nyboe v Allen, 10 Misc 2d 895, affd 7 AD2d 822).
A second reason for not finding tenure here is Gadzella v Neumaier (67 Misc 2d 585). This case held appointment by the chancellor or board of trustees was the sole means of obtaining tenure under the State regulations and tenure by estoppel[7] *212 was not possible thereunder. Admittedly, the regulations have been amended since that decision and the language at the time of claimant’s dismissal was less clear with respect to the holding therein. However, even if tenure by estoppel were possible after October 1, 1971 (the effective date of the amended regulations), that would not aid claimant because he had not had three years of "further employment” (see 8 NYCKR 335.4 [a]) after that date (October 1, 1971) at the time of his discharge (February 26, 1973).
Finally, claimant cannot contend he justifiably relied upon the acquisition of a continuing appointment. The thrust of his testimony was he thought his temporary appointment was a tenured one from its inception in 1965. This was the one fact the hearsay representations of Dr. Moore were admissible to show (i.e., claimant’s state of mind when he accepted the 1965 appointment). This evidence, together with claimant’s admissions, clearly reveal claimant believed he had tenure from the beginning, despite the language of the appointment agreement. He cannot now urge he also thought he was going to get tenure again after three years, particularly in view of the regulations existing at the time of his appointment (see Gadzella v Neumaier, supra). Claimant’s argument for tenure by estoppel is thus not only contrary to a proper interpretation of the relevant regulations, but also contrary to claimant’s own expectations at the time of his appointment.
Therefore, on all the evidence, we find claimant had only a temporary appointment from September 1, 1965 to February 26, 1973 and the applicable regulations permitted his termination without cause, notice or a hearing.
This finding does not end our deliberations, however, because claimant raised the additional argument that his constitutional due process rights were violated by the subject termination, citing Perry v Sindermann (408 US 593). We believe that Texas case is inapplicable to the instant circumstances and, in fact, the companion case to Perry, namely, Board of Regents v Roth (408 US 564), points to the proper finding here.
In Perry (supra), the Supreme Court denied summary judgment against a junior college professor suing for damages and reinstatement following an alleged wrongful discharge. The court found the plaintiff should be given an opportunity at trial to show, if he could, that his termination violated his constitutional rights of (a) free speech and (b) due process. *213 With respect to free speech, the court held plaintiffs lack of contractual or tenure rights should not foreclose him from showing his firing was in retaliation for criticism of the school administration. The court said this could be the deprivation of a benefit (employment) for a constitutionally impermissible reason (exercise of an individual’s free speech right). With respect to due process, the court held the subject junior college allegedly could have an implied de facto tenure system (it had no formal tenure provisions) and plaintiff should be given a chance to prove there was such a system and he was within it. In the instant claim, there is absolutely no claim for infringement of claimant’s freedom of speech and there are explicit written regulations which completely define and delimit the acquisition of tenure. As discussed above, claimant did not come within the formal tenure provisions and there were no allegations or proof of any additional de facto tenure system.
In the Roth case (supra), summary judgment was denied an assistant professor who was suing because his one year contract was not renewed. The court held the terms of plaintiff’s appointment did not give him a property interest sufficient to require Fourteenth Amendment due process protections.[8] The court stated (p 575) "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty’ when he simply is not rehired in one job but remains as free as before to seek another.” The court found no charges were made against plaintiff and no disability was imposed which foreclosed other employment opportunities. Similarly here, the school’s dismissal of claimant was solely because he no longer had a hospital position from which he could teach. The school made no charges against him and imposed no disability on his seeking other employment. In fact, in his February 26, 1973 letter to claimant, Dr. Plimpton states he "would be delighted to consider” claimant for another appointment at the school if claimant re-established with another hospital.
In a concurring opinion to Perry (408 US 593, 603, supra) Chief Justice Burger noted "that the relationship between a state institution and one of its teachers is essentially a matter of state concern and state law.” A recent lower court case, Aster v Board of Educ. of City of N. Y. (72 Misc 2d 953), discusses the ramifications of Perry and Roth under New York *214 law. In finding the loss of a teaching license a disability of the kind entitled to Fourteenth Amendment protections, the court noted (p 958) its factual situation did not involve mere nonretention, but also entailed "a loss of license, limitation of future employment opportunities and a possibly damaged reputation”. None of these elements were shown here.[9]
Accordingly, we find claimant was properly discharged by the school and that discharge did not involve any violation of his constitutional rights. We thus find no liability was incurred by the State.
We note parenthetically that even if claimant was improperly discharged, he failed to show any basis for recovery against the State. As noted above (see pp 208, 209, supra), this court is without power to order reinstatement, and any damages for injury to good name, character and reputation are not recoverable. As to the remaining relief requested by claimant, damages for loss of wages, we fail to see how the State is liable to claimant for such damages when his salary was paid wholly by the hospital. Claimant argues the affiliation agreement between the school and the hospital and the school’s acceptance of claimant’s professorial services somehow imposed liability on the State for his salary. We find no substance to these arguments.
The appointment letter of September 1, 1965 specifies the State was not to pay claimant’s salary and no other agreement was even alleged between claimant and the school. The affiliation agreement between the school and the hospital is explicit and emphatic as to the retention of independence by the individual institutions, particularly the hospital. The first article of the agreement states that neither it nor its application is intended to affect or abridge the powers of the hospital, including "the determination of the acceptability and desirability of members of the hospital’s * * * staff”. This independence is reiterated in the article dealing with department chiefs and medical staff. It states the hospital has "the jurisdictional power to determine the acceptability and desirability of members of the hospital’s medical staff irrespective of faculty appointment(Emphasis added.) Such language is wholly inconsistent with the assumption of liability by the State.[10]
*215 The additional argument that the State became impliedly liable because it benefited from claimant’s services ignores the fact claimant was fully paid therefor by the hospital. Moreover, the services received by the school were as a third-party beneficiary of claimant’s employment contract with the hospital, under the terms of the affiliation agreement. We fail to see how any liability against the State results therefrom.
At the close of evidence, we reserved decision on the defendant’s motion to dismiss this claim. Said motion is now granted and the clerk is directed to enter judgment in accordance herewith.

. Part 335 has been amended since claimant’s termination. All references to provisions of said part which have been so amended are in terms of the regulations in force at the time of claimant’s termination, unless otherwise noted.

. The court is aware late filing of a claim is a potentially fatal jurisdictional defect in this forum and can be raised at any time, even on appeal. We believe the better and more diligent practice would be for the State to make late filing dismissal motions before trial, and we, as well as other Judges of this court, have consistently maintained this position on and off the record. Unfortunately, this court is too often confronted with such motions during trial, or upon its conclusion. It is evident that if a claim is in fact jurisdictionally defective, the making of a seasonable motion before trial can save time and often significant expenses for both sides and their witnesses. Additionally, a prompt motion will sometimes leave sufficient time for the defect to be cured or excused (see Court of Claims Act, § 10, subd 5). This would permit the preservation of otherwise meritorious claims. We believe these considerations outweigh any discernible advantage in the delay of such motions. The prompt disposition of such technical defects would, undoubtedly, promote the equitable administration of justice.

. From various witnesses’ testimony, the court has assumed regulations substantially similar to those in effect August 16, 1966 (see 8 NYCRR Parts 335, 338) were in force at the time of claimant’s appointment in 1965. Both sides have argued on the basis of such regulations.

. Section 338.1 specifically says a temporary appointment was terminable at will "notwithstanding any other provision of this Part 338.” Part 338 covers all forms of termination for all types of appointments.

. All appointments were terminable for age or physical or mental incapacity (see 8 NYCRR 338.3), for retrenchment (see 8 NYCRR 338.14) and of course by resignation. However, these general forms of termination are not relevant to our discussion. We are concerned here only with the forms of termination specifically applicable to each type of appointment.

. The above noted types of temporary appointments were those which "ordinarily shall be given” (see former 8 NYCRR 335.11, now 335.19, emphasis added). However, the enumeration in this provision was not exclusive and in an unordinary situation, such as claimant’s dual position, a temporary appointment would be permissible even though not falling within one of the three listed categories.

. It should be noted the cases cited by claimant to support his position of tenure by estoppel involved schools which were actually paying the teacher. Such were not the circumstances at bar.

. There was also a free speech issue involved in this case, but it was being determined separately and was not before the Supreme Court.

. In fact, it is questionable whether the Aster court should have considered damaged reputation. (See p 209, supra.).

. This language also conclusively negates the contention advanced by claimant *215 that the school should somehow have prevented claimant’s discharge by the hospital. Claimant indicated instances where the school had withdrawn its students from the hospital when dissatisfied with the latter’s policies, but such withdrawal was not required under the terms of claimant’s appointment. Further, the hospital did consult with the school prior to claimant’s hospital discharge and under the circumstances any action such as withdrawal would have been contrary to the letter and spirit of the affiliation agreement.