Florence HARON, Plaintiff,

v.

BOARD OF EDUCATION OF the CITY OF NEW YORK and Irving Anker, as Chancellor of the New York City School District, Defendants.

No. 75 Civ 1120.

United States District Court, E. D. New York.

March 31, 1976.

James R. Sandner, New York City, for plaintiff.

W. Bernard Richland, Corp. Counsel by Rosemary Carroll, Asst. Corp. Counsel, New York City, for defendants.

## OPINION AND ORDER

PLATT, District Judge.

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that plaintiff's complaint "fails to state a cause of action".

Technically, such a motion would lie under Rule 12(b)(6) and would seek an order of dismissal for "failure to state a claim upon which relief can be granted", but in view of the fact that defendants have filed an answer and an affidavit and a statement under Rule 9(g) of the General Rules of this Court in support of the motion, the motion will be treated as one for summary judgment under Rule 56.

Since the plaintiff did not file a counterstatement of material facts pursuant to Rule 9(g), defendants' statement of such facts must be accepted as true. Such facts which are set forth as "not in dispute" are as follows.

As to the portion of defendants' motion which is stated to be based on the ground that the termination of plaintiff's probationary service did not violate property or liberty rights secured by the Fourteenth Amendment:

"1. The plaintiff was appointed to probationary employment on February 8, 1973 as a high school teacher.

"2. Plaintiff's probationary period was scheduled to terminate on February 8, 1976.

"3. During the course of said employment plaintiff was rated unsatisfactory by Principal of Morris High School, Chester V. Wiggan who recommended discontinuance of her probationary service and denial of tenure.

"4. The recommendation of Principal Schain was concurred by Assistant Superintendent Bertha Gordon.

"5. The areas considered in reviewing plaintiff's employment as set forth in the report of probationary service of teacher for completion of probation include:

## A. PERSONAL AND PROFESSIONAL QUALITIES

Professional attitude

Sympathetic understanding of children

Evidence of professional growth

## B. PUPIL GUIDANCE AND INSTRUCTION

Effect on character and personality growth of pupils

Control of Class

Maintenance of a wholesome classroom atmosphere

Planning and preparation of work

Skill in adapting instruction to individual needs and capacities

Effective use of appropriate methods and techniques

Skill in making the class program attractive and interesting to pupils

Extent of pupil participation in the class and school program

Evidence of pupil growth in knowledge, skills, appreciations, and attitude

## C. CLASSROOM OR SHOP MANAGEMENT

Care of equipment by teacher and children

Attention to records and reports

Attention to routine matters

## D. PARTICIPATION IN SCHOOL AND COMMUNITY ACTIVITIES

Maintenance of good relations with other teachers and with supervisors

Effort to establish and maintain good relationships with parents

Willingness to accept special assignments in connection with the school program

"6. Plaintiff was found unsatisfactory by the Principal and the Assistant Superintendent and in need of improvement in 10 other categories. (See Exhibit A—ANSWER)

"7. No charges imputing immorality or mental illness, to plaintiff or impugning her character were brought against plaintiff or raised in the examination review proceeding."

As to the portion of defendants' motion that is based upon the proposition that the termination of plaintiff's probationary appointment did not constitute a revocation of her license to teach:

"8. Plaintiff possesses a license for teacher of as a Second Language in the day high schools.

"9. Defendants have not revoked plaintiff's license nor instituted any proceeding seeking revocation of plaintiff's license."

As to the portion of defendants' motion which is based upon the proposition that the defendant Board is not a person within the meaning of 42 U.S.C. § 1983 and that a claim for damages may not be maintained against the defendant Anker acting in his official capacity:

"10. The Board is a body corporate.

"11. Irving Anker acted in his official capacity as Chancellor of the New York City School District and Superintendent of High Schools in reviewing the recommendation for discontinuance of probationary service."

In her complaint, plaintiff alleges that during the course of her probationary service "she was rated unsatisfactory by her principal in such areas as voice speech and use of English, sympathetic understanding of her children, evidence

of professional growth, control of class, skill in adapting instruction to individual needs and capacities, effective use of appropriate methods and techniques, skill in making the class program attractive and interesting to pupils, evidence of pupil growth in knowledge, skills, appreciations and attitude, care of equipment by teacher and children, and attention to routine matters."

Plaintiff further alleges in her complaint that she "was denied the right to cross-examine witnesses and the right to counsel" at a meeting held on May 15, 1974, on the recommendation of her discontinuance, that she was not tried by an impartial body, that she was not given the opportunity to present witnesses or to cross-examine those witnesses who testified against her, and that she was not notified in advance with particularity of the nature of the charges to be made against her. The result of all such actions taken by the defendants, says the plaintiff, is that she has been unable to obtain a teaching position in the public schools of the City of New York and she has suffered great financial and psychological harm.

Plaintiff therefore seeks a permanent injunction prohibiting defendants from terminating plaintiff's services without a hearing consonant with the Fourteenth Amendment of the Constitution and ordering the defendants to reinstate her as a teacher *nunc pro tunc.*

There is no allegation in the complaint that the alleged bases for an unsatisfactory rating were or are a part of plaintiff's personnel file or more importantly that they were or are being made available to inquiring public and private employers.

Defendants' contentions are essentially that they have not deprived plaintiff of any of her Fourteenth Amendment rights, and that this Court can so find as a matter of law based on the undisputed facts. Plaintiff responds by asserting that the termination of her employment deprived her of a property right and of liberty within the meaning of the Fourteenth Amendment.

Plaintiff's first contention is that "probationary teachers have a property interest protected by the Due Process clauses of the FIFTH and FOURTEENTH Amendments to the Constitution."

The Courts have consistently held, however, that since probationary teachers do not have tenure they do not have any such "property interest", *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; *Lombard v. Board of Education,* 502 F.2d 631 (2d Cir. 1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

In an effort to distinguish her situation from that of other probationary teachers, plaintiff points out that the contract of the United Federation of Teachers and the By-Laws of the Board of Education require that probationary teachers be accorded a pre-termination hearing, and suggests that this created for her an "expectancy" of re-employment. This "expectancy", her argument runs, is a property right of which she cannot be deprived without a hearing.

The Court finds the argument without merit. A probationary teacher does not gain a "legitimate claim of entitlement" (see *Board of Regents v. Roth, supra,* at p. 577, 92 S.Ct. at p. 2709, 33 L.Ed.2d at p. 560) to a tenured position simply because the termination procedure becomes more complex and formal than it was previously. A probationary teacher who is by contract entitled to a hearing before termination is still a probationary teacher subject to termination, not a tenured teacher entitled to continuing employment.

In her complaint, plaintiff further argues that under §§ 241, 250 and 251 of the By-Laws of the Board of Education of the City of New York, plaintiff's license was "terminated effective October 18, 1974, concurrent with the termination of her probationary service * * [that] plaintiff's opportunity to obtain a new license to teach in the New York City public schools has been rendered nill

[sic] * * * [and that] plaintiff has been effectively precluded from obtaining such employment by the actions of defendants herein."

In her brief, plaintiff does not press this argument, presumably because it was decided adversely to her (and in this Court's opinion, correctly) in *Finucane v. Board of Education* (73 C 1906) and *Rice v. Anker* (75 C 18) (E.D.N.Y. Aug. 21, 1975) (Mishler, C. J.).

Plaintiff relies heavily on a series of State cases to support the claim that she has been denied a property right, but we find the cases cited unpersuasive. *Aster v. Board of Education of the City of New York,* 72 Misc.2d 953, 339 N.Y.S.2d 903 (Sup.Ct. Kings Co. 1972), for example, does hold that after *Board of Regents v. Roth,* supra, a probationary teacher must be accorded a due process hearing before termination, but the court relied on the mistaken assumption that a teacher lost his or her teaching license upon termination. That was the contention of the unsuccessful plaintiffs in *Finucane* and *Rice.* And the decisions in *Brown v. Board of Education of the City of New York,* 42 A.D.2d 702, 345 N.Y.S.2d 595 (2d Dept. 1973), *leave to appeal denied,* 34 N.Y.2d 519, 345 N.Y.S.2d 595 (1974), and *Greenwald v. Community School Board No. 27, Queens,* 42 A.D.2d 965, 347 N.Y.S.2d 969 (2d Dept. 1973) are based on determinations that *State law* was not properly followed, rather than on findings that Fourteenth Amendment rights were violated. Indeed, *Brown* explicitly states, 42 A.D.2d at pp. 703–04, 345 N.Y.S.2d at pp. 597–98, that *Board of Regents v. Roth* and *Perry v. Sindermann* do not overrule cases such as *Clausen v. Board of Education of the City of New York,* 39 A.D.2d 708, 331 N.Y.S.2d 855 (2d Dept. 1972), which hold that non-tenured teachers facing termination do not enjoy due process rights. While of course State Court decisions in this field do not bind us, we in any event find that the cases cited do not support plaintiff's "property right" contentions.

█ Plaintiff's second major contention is that she has been stigmatized by the Board's action, and that for the Board to create such a stigma without affording her a due process hearing to rebut any charges against her deprives her of liberty in violation of the Fourteenth Amendment. Plaintiff argues that "an unsatisfactory rating results in damage to plaintiff's reputation and the imposition of a stigma" and relies upon (among other cases) *Board of Regents v. Roth, supra; Perry v. Sindermann,* supra, and *Velger v. Cawley,* 525 F.2d 334 (2d Cir. 1975).

The only one of these three in which the Court held that a due process hearing was required was the *Velger* case. The facts in that case, however, are clearly distinguishable from those in the case at bar. There the "stigmatizing" information with respect to the terminated probationary policeman had not only been placed in his personnel file but had been made available to inquiring public and private employers, thereby depriving the plaintiff in that case of his liberty without a due process hearing. See *Lombard v. Board of Education,* 502 F.2d 631, 637 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

Moreover, in the *Velger* and *Lombard* cases a stigma was attached in that the plaintiff in each of those cases was charged with and found to have a mental illness or aberration, but was not afforded an adequate opportunity to refute the same. In the case at bar, on the other hand, all that the defendant did was rate the plaintiff's performances unsatisfactory in various particulars, none of which questioned her good name, reputation, honor, integrity or mental capacity or health.

Thus the facts in this case fall squarely within the excepting language in the *Roth* decision and the later decision by the Court of Appeals in *Russell v. Hodges,* 470 F.2d 212 (2d Cir. 1972). In *Roth* the Supreme Court specifically stated (408 U.S. at pp. 573 and 574 n. 13, 92 S.Ct. at p. 2707, 33 L.Ed.2d at p. 558.)

"* * * In the present case, however, there is no suggestion whatever that the respondent's 'good name, reputation, honor, or integrity' is at stake.

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."

* * * * * *

"There is no suggestion of how non-retention might affect the respondent's future employment prospects. Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.' "

And in the *Hodges* case, the Court of Appeals said (470 F.2d at p. 216):

"As we understand these opinions [*Roth and Sindermann*], an employee seeking to show, absent any claim of First Amendment violations, that his termination was a deprivation of 'liberty' must demonstrate that the government had made a charge 'that might seriously damage his standing and associations in the community' or had imposed 'a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.' 408 U.S. at 573, 92 S.Ct. [2701] at 2707. The Court made clear that by the latter phrase it meant something more than the disadvantage inevitably entailed when a person 'simply is not rehired in one job but remains as free as before to seek another.' 408 U.S. at 575, 92 S.Ct. [2701] at 2707."

Under the authorities, therefore, it is clear that plaintiff is not entitled to any hearing whatsoever prior to termination of her services as a probationary teacher. *A fortiori* the Fourteenth Amendment did not entitle her, in the hearing given to her under Section 105(a) of the By-Laws of the Board of Education, to the "due process requirements" for which her counsel argues herein, viz.: right to counsel, right to confront and cross-examine witnesses, right to reasons for termination, etc. In other words, in having received a "105(a)" hearing, or a hearing of any sort, she was accorded more than the Constitution requires for a person in her circumstances. And any shortcomings in the hearing she received as measured by 105(a) standards would therefore present only a question of State law, not a question with Constitutional dimensions.

For the foregoing reasons defendants' motion for summary judgment must be and the same hereby is granted.

SO ORDERED. Submit Judgment.