**Dr. H. Allen ORSHAN, Plaintiff,**

v.

**Irving ANKER; James Boffman; Frank J. Macchiarola; Board of Education of the City of New York, Defendants.**

**No. 79 C 309.**

United States District Court,
E. D. New York.

May 7, 1980.

Lynne F. Stewart, New York City, and Fredric J. Gross, Haddonfield, N. J., for plaintiff.

Allen G. Schwartz, Corp. Counsel, City of New York, New York City by Richard B. Cohen, Yonkers, N. Y., Joseph F. Bruno, New York City, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, an employee since before 1969 of defendant Board of Education ("Board"), commenced this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 challenging defendants' refusal to acknowledge his claim of tenure as a day high school principal. He seeks damages, back pay, declaratory judgment that he is a tenured principal, and an order directing defendants to expunge from his records an adverse report and recommendation and to amend his records to reflect his tenured status. The action is before the court on defendants' motion for summary judgment. Rule 56, F.R.Civ.P.

Summary judgment may be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. As the Court of Appeals for this circuit has stated, when a motion for summary judgment is properly supported by affidavits or the other materials referred to in Rule 56(c),

> "an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth 'concrete particulars,' *Dressler v. The MV Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964), and cannot make a secret of his evidence, holding it close to his chest until the trial. *See Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir. 1972). It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to the motion. *Id.*

at 293. *See Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970)." *Securities Exchange Commission v. Research Automation Corp.*, 585 F.2d 31, 33 (2 Cir. 1978).

In determining whether to grant a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), *quoted in Securities Exchange Commission v. Research Automation Corp., supra*, 585 F.2d at 33. It must accept as true factual statements in the opposing party's affidavits, draw all permissible inferences in that party's favor, *Hill v. A–T–O, Inc.*, 535 F.2d 1349 (2d Cir. 1976), and resolve any doubts in favor of the latter, *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., supra.* "The very mission of the summary judgment procedure [however] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Adv. Com. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). See generally *Applegate v. Top Associates, Inc., supra; Donnelly v. Guion, supra,* 467 F.2d at 292.

With these principles in mind, it is the court's view that summary judgment is warranted on plaintiff's claims regarding his "liberty" interest and his claims under 42 U.S.C. §§ 1985, 1986. Since plaintiff has not overcome defendants' convincing presentation that no genuine issue as to any material fact exists with regard to these claims, partial summary judgment is appropriate here to preclude meritless litigation of frivolous claims.[1] *Quinn v. Syracuse Model Neighborhood Corporation*, 613 F.2d 438, 445 (2d Cir. 1980), *citing Gatling v. Atlantic Richfield Co.*, 577 F.2d 185 (2d Cir. 1978), *cert. denied*, 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1979).

Mindful, however, that summary dismissal of claims alleging deprivations of constitutionally protected interests "is appropriate only when prior case law leaves no doubt that the defendant must prevail as a matter of law," *Quinn v. Syracuse Model Neighborhood Corp., supra,* at 442, the court is of opinion that summary judgment on plaintiff's claims regarding his alleged "property" interest may not be granted at this time. Accepting as true the factual allegations in his affidavits and drawing all permissible inferences in his favor, we cannot say as a matter of law that defendants may not be estopped from denying plaintiff's claim of tenure.

The following facts appear from the papers submitted. Sometime prior to 1969 plaintiff had acquired tenure as assistant principal in charge of a school music department. Following a qualifying examination held in June 1969, he received a license for the position of principal and was assigned to that position at Julia Richman High School effective September 3, 1969. Pursuant to N.Y. Educ. Law § 2573(1), plaintiff was required to complete a three-year probationary period before he would be eligible for tenure as a principal.

In a letter and report dated January 26, 1971, defendant Boffman, an assistant superintendent, informed plaintiff that he had rated his services during the probationary period ending January 1971 as unsatisfactory. Boffman's report concluded, "I do

---

1. Plaintiff's suggestion that his First Amendment rights were violated by defendants' actions is equally without merit. The complaint alleges no more than that the unsatisfactory report and recommendation followed plaintiff's refusal to obey an instruction to institute a certain narcotics education program at Julia Richman High School. Conduct challenging superiors that threatens institutional harmony and efficiency cannot be considered constitutionally protected "speech." *Pickering v. Board of Education*, 391 U.S. 563, 569–70, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968). See *Janusaitis v. Middlebury Volunteer Fire Department*, 607 F.2d 17, 26 n.15 (2d Cir. 1979). Plaintiff's assertion that he believed the program to be of dubious educational value reveals the issue to be, at most, a disagreement among school officials over pedagogical policy. Since this court's role "is not to choose the better educational policy," *East Hartford Ed. Ass'n v. Board of Ed. et al.*, 562 F.2d 838, 859 (2d Cir. 1977), plaintiff has failed to state a claim under the First Amendment.

not recommend continuance of service as Principal" and his letter instructed plaintiff to report to Boffman's office "until further notice." Plaintiff served at Board of Education headquarters until, by letter dated December 20, 1971, he was notified by the Board's Executive Director of Personnel that he was reassigned to Seward Park High School to serve as chairman of the Department of Music. He was instructed to "report to the Principal [of Seward Park] who has been informed of this reassignment."

Following plaintiff's request in February 1971 to appeal the unsatisfactory rating, review proceedings were held pursuant to section 105a of the Board's by-laws. The review committee in June 1972 recommended that the Chancellor reverse the unsatisfactory rating. In March 1975, plaintiff instituted an action under Article 78 of the N.Y. Civil Practice Law and Rules alleging unreasonable delay and seeking to compel the Chancellor to act upon the review committee's recommendation. Pursuant to an order of the New York Supreme Court favorable to plaintiff, Chancellor Anker issued his decision in December 1975, ruling that the 105a hearing "was procedurally defective and that Dr. Orshan is entitled if he so requests to have a *de novo* review proceeding under Section 105a." Plaintiff then instituted another proceeding under Article 78, this time seeking to compel the Chancellor to expunge the unsatisfactory rating and to acknowledge plaintiff's claim of tenure. Following a series of court proceedings, the Supreme Court on July 17, 1978, remanded the matter for a *de novo* 105a hearing.

It appears that at no time after January 1971 did plaintiff serve at Julia Richman High School and that from December 1971 at least through the 1977–78 academic year plaintiff performed, as discussed below, a variety of functions at Seward Park High School. During this period, he was paid at the salary level of a principal, and served on a principal's license. In the fall of 1978, by orders made effective August 30, 1978, he was returned to the salary line of an assistant principal. Plaintiff has not requested

the *de novo* 105a review now available to him, but instead, on February 5, 1979, instituted this action alleging civil rights deprivations.

■ At the outset, it is clear that defendants are entitled to summary judgment on plaintiff's claims under 42 U.S.C. §§ 1985, 1986 alleging a conspiracy to deprive him of equal protection of law and neglect in failing to prevent such a conspiracy. In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Court concluded that

> "[t]he language requiring intent to deprive equal protection, or equal privileges and immunities, means that there must be some racial or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U.S. at 102, 91 S.Ct. at 1798.

The language of § 1985 has been interpreted to require discrimination between classes based on racial bias, national origin or religion, *Perrotta v. Irizarry*, 430 F.Supp. 1274, 1278 (S.D.N.Y.), aff'd, 573 F.2d 1294 (2d Cir. 1977), citing *Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975); *Arnold v. Tiffany*, 487 F.2d 216 (9th Cir. 1973), cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); *Western Telecasters, Inc. v. California Federation of Labor*, 415 F.Supp. 30 (S.D.Cal. 1976), and the class must be "well defined" and "a traditionally disadvantaged group." *Santiago v. City of Philadelphia*, 435 F.Supp. 136, 156 (E.D.Pa.1977).

■ Although the complaint and plaintiff's submissions in opposition to the instant motion allege repeatedly a series of so-called overt conspiratorial acts, plaintiff fails entirely to set forth any allegation of class-based discriminatory animus. Whatever the scope of a § 1985 action, which is currently undergoing an evolutionary process, see *Great Am. Federal S. & L. Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Regan v. Sullivan*, 557 F.2d 300, 307–08 (2d Cir. 1977), the court is

of opinion that plaintiff's claims under §§ 1985 and 1986 are frivolous, and his bald conclusory accusations of improper conspiratorial conduct, which are flatly denied, fail to state a claim and are insufficient to forestall summary dismissal.

Turning next to plaintiff's due process claims, his right to relief will depend upon whether defendants' actions infringed upon an interest of plaintiff's that rises to the level of "liberty" or "property" protected by the Fourteenth Amendment. *Simard v. Board of Education of Town of Groton*, 473 F.2d 988, 992 (2d Cir. 1973). In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court concluded that to demonstrate a deprivation of "liberty," a plaintiff must show that the reasons given for a defendant's adverse employment determination attached to plaintiff some stigma that would damage his standing in the community or foreclose him from taking advantage of other employment opportunities.

■ In *Roth* the Court made it clear that the stigma to which it referred must involve some serious personal charge, such as an accusation of dishonesty or moral turpitude that would call into question the plaintiff's "good name, reputation, honor, or integrity." *Board of Regents v. Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707, *citing Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). It is not sufficient that a discharge or demotion might make a person less attractive as an employee due to the fact that he "simply is not rehired in one job but remains as free as before to seek another." 408 U.S. at 574, 575, 92 S.Ct. at 2708. Moreover, in cases where a plaintiff's good name is not damaged, or is subsequently cleared, the Court in no way sought to limit an employer's right to deny future employment for other reasons. *Id.* at 573 n.12, 92

S.Ct. at 2707 n.12; *Russell v. Hodges*, 470 F.2d 212, 217 (2d Cir. 1972).

Here, plaintiff complains that defendants' course of conduct has subjected him to "extreme embarrassment" and "loss of professional esteem" and has had the result of "destroying the career and reputation of a public employee." However, all of the annual reports that plaintiff submits on this motion rate him as "satisfactory." The unsatisfactory report and recommendation dated January 26, 1971, and the reasons given for that rating on April 1, 1971, describe specific incidents and problems at Julia Richman while plaintiff served there as principal. They cite plaintiff's lack of leadership ability and his failure to maintain discipline at the school and the respect of teachers and parents.

■ Beyond his conclusory allegations of denial of career advancement, plaintiff fails to suggest how these assessments might in any way have seriously damaged his standing in the community. Plaintiff makes no claim that any report was ever published, *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Longarzo v. Anker*, 578 F.2d 469, 472 (2d Cir. 1978), by any defendant, see *Paul v. Davis*, 424 U.S. 693, 708–10, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976); *Wisconsin v. Constantineau, supra*, 400 U.S. at 437, 91 S.Ct. at 510. It is clear that the single unsatisfactory rating and unpublished reports detailing plaintiff's job-related shortcomings cannot be deemed to constitute a stigma sufficient to implicate due process protections. *Gentile v. Wallen*, 562 F.2d 193, 197–98 (2d Cir. 1977); *Russell v. Hodges, supra; Capers v. L.I.R.R.*, 429 F.Supp. 1359, 1368 (S.D.N.Y.), *aff'd*, 573 F.2d 1291 (2d Cir. 1977); *Haron v. Board of Education*, 411 F.Supp. 68 (E.D.N.Y.1976). It is the court's view, therefore, that summary judgment on plaintiff's claim regarding his "liberty" interest is appropriate.[2]

---

**2.** We note that soon after the unsatisfactory rating, and at plaintiff's request, he was granted the section 105a hearing to review defendant Boffman's report and recommendation. That proceeding was eventually declared procedurally defective under New York law. Plaintiff, however, has not sought the *de novo* hearing to which he is now entitled. Since we are of opinion that the unsatisfactory rating and report did not affect plaintiff's "liberty" interest,

■ Turning finally to plaintiff's "property" interest claim, in order to be entitled to relief, he must demonstrate that defendants' actions deprived him of a constitutionally protected interest in continued employment as a high school principal. *Board of Education v. Roth, supra; Perry v. Sinderman, supra; Bishop v. Wood, supra.* The test to determine what constitutes a property interest for due process purposes, first enunciated in *Roth*, is whether a plaintiff may invoke

> "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709.

However, the unilateral expectation of continued employment in a particular position is not sufficient to create such an interest. *Id.*

■ Since "the sufficiency of the claim of entitlement must be decided by reference to state law," *Bishop v. Wood, supra*, 426 U.S. at 344, 96 S.Ct. at 2077, if, under New York law, plaintiff had acquired tenure, then defendants could not refuse to acknowledge that status without affording him the protections of notice and a hearing pursuant to N.Y.Educ.Law § 3012, 3020–a. Under New York law, a principal may acquire tenure in either of two ways. First, the Board of Education, upon written recommendation of the Superintendent after the expiration of the probationary term, may explicitly confer tenure. N.Y. Educ.Law § 3012. Plaintiff does not claim he was granted tenure in this manner.

■ Secondly, under certain circumstances, the Board may be estopped from dismissing or demoting an employee by its own failure to take the action required by law to grant or deny tenure. Tenure by estoppel has been found where a teacher continues to teach beyond the expiration of the probationary period, with the knowl-

edge and consent of the Board, and continues to be paid for those services. See *Gunthorpe v. Board of Education*, 41 Misc.2d 757, 246 N.Y.S.2d 462 (Sup.Ct.1963). Recognizing, however, that tenure laws are in derogation of common law freedom to contract, the State courts have strictly construed them and will sustain a tenure gained through estoppel only if the teacher has rendered actual service beyond the probationary term, *Mugavin v. Nyquist*, 48 A.D.2d 727, 367 N.Y.S.2d 604 (3d Dept. 1975), *aff'd*, 39 N.Y.2d 1003, 387 N.Y.S.2d 241, 355 N.E.2d 296 (1976); *Gunthorpe v. Board of Education, supra*, or actual service completing and beyond the term in a similar position performing substantially similar duties. See *Elisofon v. Board of Education*, 51 A.D.2d 724, 379 N.Y.S.2d 145 (2d Dept. 1976); *Griffith v. Board of Education*, 43 A.D.2d 953, 352 N.Y.S.2d 214 (2d Dept. 1974). *Cf. Hagen v. Board of Education*, 59 A.D.2d 806, 398 N.Y.S.2d 762 (3d Dept. 1978); *Coates v. Ambach*, 52 A.D.2d 261, 383 N.Y.S.2d 672 (3d Dept. 1976), *aff'd*, 42 N.Y.2d 846, 397 N.Y.S.2d 630, 366 N.E.2d 290 (1977).

Plaintiff attempts to raise an issue of material fact by asserting that he served in the position of principal beyond the expiration of the three-year probationary period. He acknowledges, however, that he "was relieved as Principal of Julia Richman High School and assigned to work in defendant James Boffman's office at the headquarters of defendant Board of Education." Complaint at ¶ 46. Nor does he deny Boffman's statement that at no time after January 26, 1971, was he ever appointed or assigned to serve the duties of the position of principal, and he concedes receiving the letter of December 20, 1971, which reassigned him to Seward Park High School as chairman of the music department. In fact, plaintiff complains that despite his "repeated demands," defendants "refused to assign him to duties appropriate to a day High School Principal." Complaint at ¶ 72. Finally, re-

---

any shortcomings in the 105a proceedings present only a question of State law, rather than an issue of constitutional magnitude. See

*Haron v. Board of Education, supra*, 411 F.Supp. at 73.

sponding to plaintiff's suggestion that during his years at Seward Park he served as principal, defendants have submitted the affidavit of Rubin Maloff stating that at all times since September 1970, he was principal of Seward Park High School. Not only does plaintiff fail to answer this submission, but each of the annual rating reports plaintiff submits on this motion is signed by Rubin Maloff as principal of Seward Park.

Thus plaintiff would be able to prevail on this claim only if he could demonstrate that with defendants' knowledge and consent, he served the remainder of his probationary term and beyond in a position with duties substantially similar to those of principal. *Griffith v. Board of Education, supra; Agresti v. Buscemi,* 34 A.D.2d 983, 312 N.Y. S.2d 849, 851 (2d Dept. 1970), *aff'd,* 28 N.Y.2d 984, 323 N.Y.S.2d 840, 272 N.E.2d 339 (1971). On that issue there clearly exist genuine questions of fact that preclude a grant of summary judgment.

To refute defendants' contentions that their actions indicate a consistent refusal to acknowledge his claims to tenure as a principal, plaintiff has come forward with annual individual rating reports for the academic years 1972–73 through 1977–78 signed by the principal of Seward Park. These reports characterize plaintiff as "tenured" and serving on a principal's license, and defendants concede that the salary levels on these reports are those of a principal. Although defendants assert that a principal's license evidences no more than eligibility for that position and contend that plaintiff was paid a principal's salary because of a clerical error, these six years of reports at least raise an issue as to whether defendants consented to plaintiff's continued service in a position possibly related to that of principal.

Although Boffman's affidavit in support of defendants' motion asserts that the duties performed by plaintiff at Seward Park differed in nearly every respect from those he had performed previously as a probationary principal at Julia Richman— an assertion plaintiff denies—it does appear that under New York law there exist "tenure areas," dividing various teaching and supervisory positions, that can be used to determine whether service in two or more related jobs beyond the probationary term may establish tenure. See *Becker v. Board of Education,* 9 N.Y.2d 111, 211 N.Y.S.2d 193, 172 N.E.2d 568 (1961); *Hannan v. Board of Education,* 55 A.D.2d 647, 390 N.Y.S.2d 148 (2d Dept. 1976). Defendants' position that plaintiff served as no more than either a department chairman or an assistant principal necessarily implies that plaintiff performed at least some supervisory duties. Accepting as true plaintiff's statements, it would be wholly permissible to infer that although some, or even many, of his duties changed when he was transferred to Seward Park, he may have remained in the same "tenure area." See *Agresti v. Buscemi, supra.* Thus it cannot be said as a matter of law, in the light of defendants' repeated rating of plaintiff as both "tenured" and a "principal," that his reassignment letter of December 20, 1971, placed him in an entirely independent tenure area. *Cf. Hannan v. Board of Education, supra.*

██ While it is clear that a unilateral and subjective expectation of tenure is insufficient to create a constitutionally protected entitlement, *Board of Regents v. Roth, supra; Yanoff v. Commissioner of Education,* 66 A.D.2d 919, 410 N.Y.S.2d 713 (3d Dept. 1978), genuine issues are presented here which may not be resolved on a motion for summary judgment, but must await a trial.

Accordingly, defendants' motion for summary judgment is granted in part and denied in part, to the extent indicated herein.

SO ORDERED.