**James WALLER, et al., Plaintiffs,**

v.

**Bernard BUTKOVICH, et al., Defendants.**

Civ. A. No. 80–605–G.

United States District Court, M.D. North Carolina, Greensboro Division.

March 27, 1985.

P. Lewis Pitts, Jr., Greensboro, N.C., Carolyn McAllaster, Durham, N.C., Dan Sheehan, Washington, D.C., Stewart Kwoh, Legal Alliance for G'bo Justice, Los Angeles, Cal., Flint Taylor, Michael Deutsch, People's Law Office, Chicago, Ill., James McNamara, Columbus, Ohio, Burt Neuborne, Amer. Civ. Liberties, New York City, for plaintiffs.

Norajean M. Flanagan, Criminal Section, Civil Rights Div., Dept. of Justice, Washington, D.C., for Prosecution in Criminal Case.

Robert W. Warren, Black Mountain, N.C., Jonathan C. Moore, Nat. Lawyers Guild, New York City, for Amicus Curiae.

Virgil Griffin, David Wayne Matthews, Lawrence Gene Morgan, Coleman Blair Pridmore, Lisford Carl Nappier, Sr., Jerry Paul Smith, Michael Eugene Clinton, Roy Clinton Toney, Roland Wayne Wood, Claude Matthew McBride, Jr., Edward W. Dawson, Rayford Milano Caudle, Jack Wilson Fowler, Jr., Harold Covington, Gorrell Pierce, Billy Joe Franklin, Terry Wayne Hartsoe, Harold Dean Flowers, and Mark Sherer, pro se.

Charles E. Nichols, Fred T. Hamlet, Kenneth Kyre, Jr., Jesse L. Warren, City Atty., Greensboro, N.C., for Swing, Bateman, Baucom, Melvin, Lovelace and City of Greensboro, N.C.

R. Joseph Sher, Asst. Director, Eileen O'Brien, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Kenneth W. McAllister, U.S. Atty., Greensboro, N.C., for Butkovich, Pelczar, Pence, Moses, Westra and Conroy.

Charles T. Hagan, Jr., Daniel W. Fouts, Adams, Kleemeier, Hagan, Hannah & Fouts, Larry I. Moore, III, Gerard M. Chapman, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., Appointed as Friend of Court to represent indigent defendants.

## MEMORANDUM

MERHIGE, District Judge.

Before the Court is plaintiffs' "Renewed Motion to Dismiss Ku Klux Klan and Nazi Defendants' Purported Counterclaims." Plaintiffs filed the motion on February 26, 1985. Although filed only two weeks before trial, the Court deemed it appropriate to entertain the motion in view of the possibility that, if well taken, a simplification of the issues in this factually complicated lawsuit might well result. Plaintiffs argued the motion at the Court's hearing in Greensboro on February 28, 1985.

The Klan and Nazi defendants against whom the instant motion is directed have generally been proceeding *pro se* throughout the pendency of this action. Beginning in November, 1984, however, counsel acting as Friends of the Court, pursuant to the Court's appointment, have assisted certain of the *pro se* Klan and Nazi defendants.[1] Upon the Court's request at the February 28 hearing, Friends of the Court filed, on March 7, 1985, a responsive brief to plaintiffs' motion. This motion was denied orally in Open Court on March 11, 1985. This memorandum elaborates the reasons for the Court's decision.

BACKGROUND

A number of the defendants in this suit, who are allegedly members of the Ku Klux Klan or the American Nazi Party, filed pleadings that include counterclaims. These counterclaims have been filed in responsive pleadings to both the initial and the amended complaint.

In their respective answers to plaintiffs' initial complaint, fifteen of the nineteen Klan and Nazi defendants remaining in this

---

1. The court wrote all *pro se* defendants in a letter filed October 24, 1984, informing them that they should complete a questionnaire and enclosed affidavit of indigency should they wish to be considered for appointment of counsel.

Only five ultimately provided such information: defendants Caudle, Matthews, McBride, Pridmore, and Fowler. All are currently assisted by Friends of the Court.

action [2] filed counterclaims, none of which was artfully pleaded. At the time, none of the Klan and Nazi defendants had the assistance of appointed counsel, nor does the record reflect the appearance of any counsel on their behalf. Indeed, most of the pleadings that these defendants filed express a desire to "assert appropriate counterclaims against the plaintiffs ..., and will do so by appropriate amendment to this answer if permitted to do so by this Court at such time as this defendant may obtain competent legal aid for that purpose." [3] Each of the fifteen counterclaims allege certain facts in connection with November 3, 1979 and/or the complaint itself, and all express a desire to recover from plaintiffs for plaintiffs' allegedly unlawful conduct against them.

Twelve of the fifteen counterclaims asserted in response to the original complaint are virtually identical.[4] The material substance of their allegations is that, on November 3, 1979, the plaintiffs conspired to and did attack the Klan and Nazi defendants, to deprive those defendants of their rights under the First Amendment and of other civil rights. The allegations fairly imply that plaintiffs attacked defendants because defendants were opposed to Communism. Two other of those fifteen original counterclaims allege "abuse of process" and "malicious prosecution" only; they state that the complaint is false and that the plaintiffs know this.[5] Another of the fifteen alleges that a variety of the defendants' rights under constitutional and state law were violated, and that plaintiffs

attempted to attack him on November 3, 1979.[6]

Plaintiffs filed replies to the latter three counterclaims, denying them and contending that they fail to state a claim. According to their brief in support of the instant motion, plaintiffs declined to file replies to the others because they construed them not to be counterclaims.

On May 3, 1982, plaintiffs, by leave of Court, filed an amended complaint. Only seven of the Klan and Nazi defendants answered the amended complaint.[7] These seven had also answered the original complaint and had asserted counterclaims at that time. Their responsive pleadings to the amended complaint, as to the original complaint, include counterclaims.

Four incorporate the allegations in their prior counterclaim.[8] In addition, defendant Wood's "Response" sets forth a version of November 3, 1979 that alleges a conspiracy among the plaintiffs, motivated by animus against Christian Americans, to attack the Klan and Nazi defendants. Defendant Wood also repeatedly alleges that the complaint is replete with false statements about him and other Klan and Nazi defendants. He seeks relief for both the alleged attack by plaintiffs and the allegedly false statements in the complaint.

Defendant Dawson alleges a counterclaim based on the alleged attack by plaintiffs and the alleged resulting deprivation of his First Amendment rights. One can fairly infer from the counterclaim that the

---

2. The Court dismissed two such defendants—Brent Milland Fletcher and Lee Joseph McLain—on May 21, 1984.

3. *See, e.g.,* the counterclaims on the first complaint of defendants listed *infra* Note 4.

4. These are the original counterclaims of defendants Roland Wayne Wood, David Wayne Matthews, Jerry Paul Smith, Jack Wilson Fowler, Lawrence Gene Morgan, Coleman Blair Pridmore, Harold Covington, Mark Sherer, Michael Eugene Clinton, Claude Matthew McBride, Jr., Gorrell Pierce, and Edward Dawson.

5. Counterclaims of Carl Lisford Nappier and Virgil Griffin.

6. Counterclaim of Raeford Milano Caudle.

7. Answers to the amended complaint, and counterclaims, were filed by Fowler, McBride, Pierce, Caudle, Dawson, Sherer, and Wood. With Leave of Court, two others—Pridmore and Matthews—filed answers to the amended complaint for the first time on February 19, 1985, at the same time that Caudle, Fowler, and McBride filed amended answers to the amended complaint. The Court had previously denied these five defendants' request to file amended counterclaims, however.

8. Fowler, McBride, Pierce, and Caudle incorporated by reference their prior counterclaims.

plaintiffs were allegedly motivated in their attack by animus against anti-Communists. He also characterizes a number of the allegations in the complaint as false and seeks to recover for alleged abuse of process.

Defendant Sherer's Answer to the amended complaint does not include facts to support a counterclaim, although he denominates the pleading as an "Answer, Counterclaim, and Claim for Other Relief." Nor does he incorporate by reference the facts alleged in his responsive pleading to the original complaint, which did include a counterclaim. Defendant Sherer does, however, express a desire to assert a counterclaim upon being appointed a lawyer, and seeks "such relief as may be proper" in his responsive pleading to the amended complaint.

Plaintiffs replied to these counterclaims on December 27, 1983. The replies, after denying the truth of any of the material facts alleged, all include the defense that the counterclaims fail to state a claim for which relief can be granted. Plaintiffs did not file a motion to dismiss, however.

On February 7, 1985—over a year later—plaintiffs did move to dismiss all pending counterclaims. The sole ground for the motion was that the Court had previously indicated a view that such counterclaims are not "colorable" for purposes of compelling the Court to appoint counsel to assist the Klan and Nazi defendants in the prosecution of their counterclaims. *See Waller v. Butkovich,* 584 F.Supp. 909, 947 (M.D.N.C.1984). The Court denied that motion,[9] and the instant motion followed shortly thereafter.

DISCUSSION

■ Plaintiffs have raised in their motion a number of points that, they argue, compel dismissal of the counterclaims. The Court addresses these arguments below. At the outset, however, the Court notes the especially lenient treatment with which it must consider *pro se* pleadings when faced with a motion to dismiss those

pleadings. As the Supreme Court has held, allegations by a *pro se* party—even though inartfully pleaded—may require the Court to afford the *pro se* party an opportunity to offer supporting evidence. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). The district court must be able to conclude "with assurance" that, under the allegations of the *pro se* complaint, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 521, 92 S.Ct. at 596, *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The Court of Appeals for the Fourth Circuit has frequently followed this rule in concluding that a district court has erred by dismissing a *pro se* complaint. *See, e.g., Hudspeth v. Figgins,* 584 F.2d 1345, 1347 (4th Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386.

■ Of course, a district court is not powerless to dismiss claims asserted by *pro se* parties. Claims that are frivolous may properly be dismissed. *Boyce v. Alizaduh,* 595 F.2d 948, 952 (4th Cir.1979). To be characterized as frivolous, the Court must conclude " 'beyond doubt' and under any 'arguable' construction, 'both in law and in fact' of the substance of plaintiff's claim that he would not be entitled to relief." *Id.* Even though a *pro se* claim is deemed not frivolous, an evidentiary hearing is not necessarily required. *See Wooten v. Shook,* 527 F.2d 976, 978 (4th Cir. 1975). The *pro se* party should have some kind of opportunity to offer evidence or to further particularize his claim, however, before the Court decides to dismiss it. *See Haines v. Kerner, supra,* 404 U.S. at 521, 92 S.Ct. at 596 (entitled to an opportunity to offer proof).

These considerations apply to the *pro se* pleadings in this case no less than in any other case. The fact that the *pro se* claims for relief are asserted in counterclaims

---

**9.** Plaintiffs reassert, *inter alia,* the same ground in the present motion. The Court remains unimpressed, for the reasons stated in its memorandum denying the motion (filed February 13, 1985).

rather than in an independent complaint is irrelevant; the counterclaim is the functional equivalent of a complaint for purposes of asserting a claim against a plaintiff. And the fact that the claims are asserted by members of the Nazi Party and the Ku Klux Klan is equally irrelevant. The counterclaims must be treated according to well-established rules of law governing the disposition of *pro se* pleadings.

## I. Effect of Expressing "desire to assert an appropriate counterclaim."

■ Plaintiffs point out that many of the *pro se* defendants indicated a "desire to assert an appropriate counterclaim" upon obtaining assistance of counsel. Plaintiffs suggest that this reflects a recognition by the *pro se* defendants themselves that they were not in fact asserting counterclaims. Plaintiffs argue that such pleadings cannot be considered to include counterclaims. But this argument is contrary to the teaching of *Haines* and its progeny, discussed *supra.* Inartful pleading is no basis for dismissing a *pro se* claim. The *pro se* defendants involved here plainly intended to assert counterclaims, and they set forth facts to support such counterclaims. That they also expressed a desire to assert such counterclaims more artfully in the future when assisted by an attorney is hardly a basis for dismissing the counterclaims now.

## II. Failure of some pro se defendants to reassert counterclaims.

■ Plaintiffs contend that the *pro se* defendants who failed to reassert their counterclaims after plaintiffs filed their amended complaint have waived their counterclaims. They have not supported this argument with any authority, however. Nor have the parties addressed how the defendants' *pro se* status affects any waiver of counterclaims that may otherwise exist. The Court shall decline to dismiss any counterclaims as "waived" at the present time. The Court will, however, entertain further briefing on the issue, and has already solicited such briefing.

## III. Counterclaims based on state law.

■ **A. Jurisdiction.** Plaintiffs contend that counterclaims based on state law must be dismissed for lack of subject matter jurisdiction. They appear to urge this argument only with respect to such counterclaims that exclusively allege state law as a basis, not to such counterclaims that may include claims based on federal law as well. Even if plaintiffs' argument is so confined, it must fail. Federal courts have ancillary jurisdiction over counterclaims based purely on state law, at least where, as appears to be the case here, those state-law counterclaims are compulsory. *See, e.g., Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 979–80 (3d Cir.1984).

■ **B. Sufficiency of allegations.** Plaintiffs state, in conclusory fashion in their motion itself, that none of the state counterclaims are properly alleged. They do not supply any supporting argument or authority in their brief, however; nor do they call the Court's attention to any particular state claims. Friends of the Court have reviewed, in their brief, the elements of assault, battery, and libel under North Carolina law, and urge that the counterclaims allege facts that satisfy these elements. This appears to be true with respect to the allegations of many of the counterclaimants. The Court will not dismiss any counterclaims based on state law in light of the present record, which is not well developed factually or legally.

## IV. Federal conspiracy claims.

Plaintiffs have vigorously argued, both in their brief and in open court, that the counterclaims allege no valid federal conspiracy claim. They focus on the elements of a claim under 42 U.S.C. § 1985(3). The counterclaims do not expressly invoke any particular statute, but the facts alleged do suggest that any possible federal claim they may have against plaintiffs arising out of the events of November 3, 1979 is based on Section 1985(3). The brief that

Friends of the Court have submitted does not suggest otherwise.

As the Supreme Court has recently summarized, to establish a violation of Section 1985(3) a party must allege and prove four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*See United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, ——, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). The Supreme Court has repeatedly held that the second element requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind the conspirators' deprivations. *Id., quoting Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Having reviewed these elements, the Court addresses plaintiffs' objections to any Section 1985(3) claims that the counterclaims may assert.

■ *Sufficiency of allegations of conspiracy.* Plaintiffs suggest that any claim asserted by the Klan and Nazi defendants must fail because the allegations of conspiracy are insufficient. Whatever the merits of this contention if those claims had been asserted by parties represented by counsel, it must be rejected here. As discussed *supra, pro se* parties are not held to the same standards of pleading as are represented parties. The counterclaims plainly allege that plaintiffs conspired against them. Any counterclaims based on Section 1985(3) cannot be dismissed merely because this allegation is conclusory, at least not until the defendants have been given an opportunity to flesh out their allegations further. Had plaintiffs moved for summary judgment on these counterclaims at the appropriate time, such an opportunity would have

arisen. They did not so move, however. It would be error for the Court to dismiss these counterclaims on the present record, even though such a dismissal might facilitate for plaintiffs and the Court a more orderly presentation of the issues in the trial of this action.

*Objects of the conspiracy: First Amendment rights, and right to travel.* The second element of a 1985(3) claim is that the purpose of the conspiracy be to deprive the victims of equal protection of the laws, or of equal privileges and immunities under the laws. Plaintiffs in effect argue that no alleged object of the conspiracy satisfies this requirement. Specifically, they argue that the facts alleged do not support an actionable conspiracy under Section 1985(3) because the facts relating to the alleged objects of the conspiracy— depriving counterclaimants of their rights under the First Amendment, as well as their right to travel—are insufficient as a matter of law to establish such violations.

As for a Section 1985(3) conspiracy based on an alleged attempt to deprive the counterclaimants of First Amendment rights, plaintiffs point out that defendants have not in any way alleged state involvement in the conspiracy. Citing *Carpenters, supra*, plaintiffs argue that this omission requires dismissal. *See* 463 U.S. at ——, 103 S.Ct. at 3358. The Court notes, however, that *Carpenters* also states that a Section 1985(3) violation for a conspiracy to infringe First Amendment rights may be asserted where the object of the conspiracy is to influence the activity of the state, as well as where the state is actively involved in the conspiracy. *See Carpenters, supra*, 463 U.S. at ——, 103 S.Ct. at 3357, 3358. Friends of the Court have argued in their brief opposing dismissal that the plaintiffs conspired to deprive the Klan and Nazi defendants of police protection. They allude to evidence developed in discovery supporting this theory. If proved, such contentions may constitute a conspiracy to influence the activity of the state so as to deprive the Nazi and Klan defendants of First Amendment rights; the police protec-

tion of which the counterclaimants may have been deprived appears to be related to their exercising First Amendment rights. The parties have not fully briefed this point, however, so the Court need not resolve it here.

Plaintiffs also argue that the counterclaimants allege no violation of any protected travel rights. They point out that the Constitution protects only the right to interstate, not intrastate, travel. *See Griffin v. Breckenridge,* 403 U.S. 88, 105–07, 91 S.Ct. 1790, 1799–1801, 29 L.Ed.2d 338 (1970). And it is true that the counterclaims do not describe in any way facts supporting the contention that interstate travel of the Klan and Nazis was involved. Further, plaintiffs argue that the facts show no burden whatsoever on the counterclaimants' right to travel—interstate or otherwise—during the November 3, 1979 incident. As to both arguments, however, a motion to dismiss is not the appropriate way to test them. Many of the *pro se* defendants have asserted, in at least a conclusory fashion, that their constitutionally protected right to travel has been violated. They must be given some opportunity to flesh out their assertions before that issue may be decided, as discussed *supra.*

Further, the Court notes that many of the counterclaimants have alleged, albeit in conclusory fashion, that plaintiffs conspired to deprive them of "other constitutional rights." Friends of the Court have referred to "adequate police protection against unprovoked attacks" as one such right. They argue that evidence developed in discovery supports the view that plaintiffs conspired to deprive them of such a right. The *pro se* counterclaimants are entitled to an opportunity to state specifically the rights of which plaintiffs conspired to deprive them in light of the evidence available to them, and to offer such supporting evidence, before any Section 1985(3) counterclaims are dismissed.

*Animus.* Plaintiffs argue that any animus behind the alleged conspiracy against the counterclaimants is insufficient to sustain a Section 1985(3) claim, and that the counterclaims must therefore be dismissed. The counterclaims generally allege animus against the counterclaimants because of, *inter alia,* their anticommunist attitudes. At least one counterclaim also alleges animus against the counterclaimants because of their Christianity and because they are white Americans.[10]

Plaintiffs argue that animus against Christians or anti-Communists is insufficient as a matter of law because such groups are not "traditionally disadvantaged classes." Plaintiffs cite two cases for the proposition that a Section 1985(3) action does not lie unless the animus is directed against a traditionally disadvantaged class. The first, *Santiago v. Philadelphia,* 435 F.Supp. 136, 156 (E.D.Pa.1977), does not so hold. It merely states that animus against traditionally disadvantaged groups is one of three types of animus that satisfies Section 1985(3). The other two types of animus, according to *Santiago,* are "irrational" animus and animus that unnecessarily burdens a person's exercise of fundamental rights. *See id.*

The second case plaintiffs cite is *Orshan v. Anker,* 489 F.Supp. 820, 823 (S.D.N.Y. 1980). In that case, the district court briefly stated that animus for Section 1985(3) purposes must be against a well-defined and traditionally disadvantaged group, citing *Santiago.* The district court also stated that several other aspects must exist in order for the animus element of Section 1985(3) to be satisfied, and noted that the animus element is undergoing "an evolutionary process." *Orshan, supra,* 489 F.Supp. at 823. The plaintiff had failed "entirely to set forth any allegation of class-based discriminatory animus," however. *See id.* Accordingly, the district court dismissed his Section 1985(3) claim. With all respect to the district court in *Orshan,* this Court suggests that *Orshan* incorrectly cited *Santiago* for the proposition that Section 1985(3) requires animus against a traditionally disadvantaged

---

**10.** *See* Response of Roland Wayne Wood, filed      July 2, 1982.

group. The Court believes that the reading of *Santiago* discussed in the preceding paragraph more accurately characterizes the *Santiago* holding concerning animus under Section 1985(3). The Court also notes that the district court in *Orshan* did not need to consider carefully the nature of the animus requirement in order to dispose of the 1985(3) claim before it, because the plaintiff made no allegations of any class-based animus whatsoever. For both of these reasons, the Court believes that *Orshan* does not persuasively establish that animus for Section 1985(3) purposes must be directed at a traditionally disadvantaged group.

The Court rejects the notion that Section 1985(3) requires that animus be directed against a traditionally disadvantaged group. A number of cases have found the requisite animus against other groups as well. *See, e.g., Keating v. Carey*, 706 F.2d 377, 386–88 (2d Cir.1983) (Republicans); *Glasson v. City of Louisville*, 518 F.2d 899, 911–12 (6th Cir.) (critics of the President), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); *see also Action v. Gannon*, 450 F.2d 1227, 1232 (8th Cir. 1971) (*en banc*) (worshippers at white parish successfully sought injunction under Section 1985(3) against disruption of services by black civil rights workers).

Plaintiffs also argue that any animus among them towards the Klan and Nazi members was not against them as anti-Communists or Christians, but was against them because of their racist attitudes and activities. But this is an issue of fact that is inappropriate for disposition in a motion to dismiss. Even assuming that this were a correct statement of the facts, however, the Court is not convinced that it would render the alleged conspiracy unactionable under Section 1985(3). *See Action v. Gannon, supra*, 450 F.2d 1227, *passim* (successful Section 1985(3) claim against black civil rights groups infringing plaintiffs' right to worship because of plaintiffs' alleged racism).

*Legislative history.* Plaintiffs contend that Congress never intended for Section 1985(3) to protect members of the Ku Klux Klan or similar groups. They allude to the fact that the Civil Rights Act of 1871—of which Section 1985(3) was originally a part—was passed primarily to protect black people and their sympathizers in the post-bellum South from racist terror of the Klan and similar groups. *See, e.g., Carpenters, supra*, 463 U.S. at ——, 103 S.Ct. at 3360 ("central concern" of § 1985(3) was "to combat violent and other efforts of Klan and its allies to resist and to frustrate the intended affects of the Thirteenth, Fourteenth, and Fifteenth Amendments").

Although the Act was prompted in that historical context, Section 1985(3) has often been successfully invoked by members of groups besides blacks—or advocates of equal rights for blacks. *See, e.g., Keating v. Carey, supra; Glasson v. Louisville, supra; Action v. Gannon, supra*. The Supreme Court has recently relied on the Act's legislative history to limit the reach of Section 1985(3), holding that it cannot redress conspiracies motivated by bias against others on account of their economic views, status, or activities. *See Carpenters, supra*, 463 U.S. at ——, 103 S.Ct. at 3360. But it remains clear that Section 1985(3) is not limited to conspiracies against blacks and/or advocates of equal rights for blacks. The Supreme Court in *Carpenters* reaffirmed the view, expressed in *Breckenridge*, that Section 1985(3) reaches "racial" animus. *See Carpenters, supra*, 463 U.S. at ——, 103 S.Ct. at 3358. Such a concept contemplates animus against groups besides blacks and advocates of equal rights for blacks. In addition, the *Carpenters* court withheld opinion on whether purely political animus satisfies the requirements of Section 1985(3). *Carpenters*, 463 U.S. at ——, 103 S.Ct. at 3360. The concept of political animus, like that of racial animus, obviously contemplates groups besides blacks and advocates of equal rights for blacks. This Court does not read *Carpenters* as confining the protection of Section 1985(3) only to blacks and their supporters, the groups that were foremost among Congress's concerns at the time the Act was passed.

It may be that when Congress passed the Civil Rights Act of 1871 it did not foresee that situations would arise in which violent attacks were directed at Klan members. But this does not mean that Congress intended, as a *per se* matter, to exclude members of the Klan and similar organizations from the protection of the Act where the elements of Section 1985(3) are otherwise met. Plaintiffs provide no authority, in the form of legislative history or otherwise, that suggests that Congress intended such a limitation of Section 1985(3). Indeed, such a reading seems unfair and may well raise other issues of constitutional dimensions.[11] The Court must reject the notion that those who are members of the Klan or similar organizations are automatically precluded from invoking Section 1985(3).

*Damages.* Plaintiffs do not challenge the sufficiency of any Section 1985(3) counterclaims due to a failure by counterclaimants to allege damages adequately. Most counterclaims have indeed alleged such damages, at least in conclusory fashion, or can fairly be inferred to allege damages. Thus, as parties proceeding *pro se*, the counterclaimants are at least entitled to an opportunity to present evidence on their damages claims, should their claim not be dismissed on other grounds at a later stage.

CONCLUSION

It is inappropriate to dismiss any of the counterclaims at this point. Thus, plaintiffs' motion to dismiss the counterclaims shall be denied.

Nevertheless, the Court recognizes the problems inherent in trying this factually complex lawsuit with the counterclaims as well as the underlying claims of the plaintiffs. The Court may conclude that it would best serve a just trial of the issues if the counterclaims were severed for separate disposition. That decision, however, must await argument.

An appropriate order will issue.

11. The Court notes that plaintiffs' proposed reading of Section 1985(3)—to exclude from its protection members of the Klan and the Nazi party—may well violate (i) the equal protection clause as invidious discrimination, and (ii) the First Amendment, as an impermissible burdening of one's right of association.